MAX 100 L.C. d/b/a Re/Max 100, an Iowa L.C., Next Generation Realty, Inc., an Iowa Corporation, and Homebuyer's Consultants, an Iowa Corporation, Appellees,

v.

IOWA REALTY COMPANY, INC., an Iowa Corporation d/b/a Iowa Realty, and First Realty, Ltd., an Iowa Corporation d/b/a First Realty, Appellants,

Midamerican Energy, an Iowa Corporation, Defendant.

No. 00–0119.

Supreme Court of Iowa.

Jan. 18, 2001.

Mark McCormick of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, and John D. French of Faegre & Benson, L.L.P., Minneapolis, MN, for appellants.

Glenn L. Norris, Carla T. Schemmel, and David N. May of Hawkins & Norris, P.C., Des Moines, and Dennis C. Schemmel of Schemmel Law Offices, P.C., Des Moines, for appellees.

CADY, Justice.

This is an interlocutory appeal from an order by the district court granting a temporary injunction in a dispute between several Des Moines area real estate companies over the division of multiple listing real estate commissions. On our review of the appeal, we vacate the temporary order for injunction entered by the district court and remand the case for further proceedings.

## I. Background Facts and Proceedings.

The parties to this appeal are real estate companies located in Des Moines. They are also members of the Multiple Listing Service of the Des Moines Area Association of Realtors.

The Multiple Listing Service compiles a list and description of the homes for sale in the Des Moines area submitted by members of the association. The list is accessible to all members, and each listing broker specifies the compensation offered to other members for the sale of a home. Generally, agents are compensated on the sale of a home by a commission, which is divided equally between the seller's agent and the buyer's agent. The agents then split their commissions with their brokers. Typically, a real estate commission is seven percent of the gross sales price.

The controversy in this case began after Max 100, Next Generation Realty, Inc., and Homebuyer's Consultants began to offer alternatives to the traditional compensation arrangement in the sale of a home. Next Generation charges a flat fee to buyers and sellers for its service instead of the traditional seven percent commission. Additionally, if a seller requests to be listed with the Multiple Listing Service, Next Generation charges the seller an extra fee, generally three and one-half percent of the selling price to compensate the buyer's agent. The flat fee charged by Next Generation generally results in a lower cost to the consumer.

Homebuyer's only represents persons seeking to purchase homes and is also compensated by a flat fee. It stopped operating as a business prior to the time the district court issued the temporary injunction. Max 100 is a franchisee of Re/Max International, Inc. It provides services to buyers and sellers on the traditional commission basis, but allows its agents to pay the broker a flat fee. This usually enables the agent to retain a larger share of the commission.

First Realty, Ltd. is a subsidiary of Iowa Realty Co., Inc. The two companies control approximately seventy percent of the Des Moines real estate market. Both companies operate under the traditional seven percent sales commission and, prior to the events of this lawsuit, divided commissions on the sale of its homes listed on the Multiple Listing Service.

Iowa Realty decided to stop sharing commissions with Next Generation for the sale of homes listed on the Multiple Listing Service shortly after Next Generation began business in 1995. Iowa Realty discontinued the practice of sharing commissions because Next Generation seldom listed homes with the Multiple Listing Service and, consequently, the agents for Iowa Realty and First Realty were unable to earn commissions for the sale of Next Generation homes. Thus, instead of splitting the seven percent commission when a home listed on the Multiple Listing Service was sold through a Next Generation agent, Iowa Realty and First Realty retained the entire amount of the commission.

Iowa Realty stopped sharing commissions with Homebuyer's because Homebuyer's agents only represented buyers and had no listings to place with the Multiple Listing Service. Thus, as with Next Generation, Iowa Realty and First Realty did not think it was fair to split commissions with Homebuyer's agents when agents for Iowa Realty and First Realty would never have an opportunity to split corresponding commissions. Finally, Iowa Realty stopped sharing commissions with Max 100 in 1999, after it concluded the owner of Max 100 solicited some of Iowa Realty's agents and possibly gained access to Iowa Realty's proprietary information.

Next Generation, Max 100, and Homebuyer's brought this action based on antitrust violations under Iowa's competition law. Along with other remedies, they sought temporary injunctive relief to require Iowa Realty and First Realty to share commissions on the same basis as they do with other association members.

Following a hearing on the application for a temporary injunction, the district court granted the requested relief under Iowa Rule of Civil Procedure 321(c). The district court determined the injunction was specially authorized by Iowa Code section 553.12(1) (1999), and the plaintiffs were not required to establish the traditional elements for the issuance of a temporary injunction of irreparable harm, maintenance of the status quo, and the lack of an adequate remedy at law. Instead, the district court determined the plaintiffs were only required to show a likelihood of success on the merits. The district court concluded the evidence produced at the temporary injunction hearing showed a likelihood of success under Iowa Code section 553.5.

Iowa Realty and First Realty sought an interlocutory appeal from the temporary injunction. We granted the request.

## II. Scope of Review.

■ Generally, our standard of review for the issuance of injunctions is de novo. *Matlock v. Weets*, 531 N.W.2d 118, 121 (Iowa 1995); *see State v. Cedar Rapids Bd. of Realtors*, 300 N.W.2d 127, 128 (Iowa 1981). This de novo review is based upon the equitable jurisdiction of the court to issue injunctions. *Matlock*, 531 N.W.2d at 121. Yet, the decision to issue or refuse "a temporary injunction rests largely [within] the sound discretion of the trial court." *Kent Prods., Inc. v. Hoegh*, 245 Iowa 205, 211, 61 N.W.2d 711, 714 (1953). We recognize a temporary injunction is a delicate matter, and the exercise of judicial power to issue or refuse a temporary injunction "requires great caution, deliberation, and sound discretion." *Kleman v. Charles City Police Dep't*, 373 N.W.2d 90, 96 (Iowa 1985). Thus, we will not generally interfere with the district court decision unless the discretion has been abused or the decision violates some principle of equity. *Kent Prods.*, 245 Iowa at 211, 61 N.W.2d at 714. The decision will also be reversed "if

not based upon sufficient grounds." *Swan v. City of Indianola,* 142 Iowa 731, 734, 121 N.W. 547, 549 (1909).

## III. Injunctive Relief.

Iowa Rule of Civil Procedure 321 describes three circumstances in which a court may issue a temporary injunction. *See* Iowa R.Civ.P. 321. The first circumstance pertains to an act causing great or irreparable harm. Iowa R.Civ.P. 321(a). The second circumstance pertains to a violation of a right "tending to make the judgment ineffectual." Iowa R.Civ.P. 321(b). Finally, the court may issue a temporary injunction "[i]n any case specially authorized by statute." Iowa R.Civ.P. 321(c).

■ Generally, the issuance of an injunction invokes the equitable powers of the court and courts apply equitable principles. *See Matlock,* 531 N.W.2d at 123. The standards considered in granting temporary injunctions are similar to those for permanent injunctions, except temporary injunctions require a showing of the likelihood of success on the merits instead of actual success. 42 Am.Jur.2d *Injunctions* § 8, at 566 (2000). These traditional equitable principles are reflected in subsections (a) and (b) of rule 321. *See* 42 Am. Jur.2d *Injunctions* § 12, at 572. In applying these principles to temporary injunctions, courts consider the "circumstances confronting the parties and balance the harm that a temporary injunction may prevent against the harm that may result from its issuance." *Kleman,* 373 N.W.2d at 96 (citing O. Fiss & D. Rendleman, *Injunctions* 343–44 (2d ed.1984) ("suggesting factors to be considered by court in exercising its discretion to grant or deny a temporary injunction")). Nevertheless, the legislature may impose a duty to grant an injunction by specifying conditions in a statute. 42 Am.Jur.2d *Injunctions* § 23, at 594. When this is done, the conditions specified in the statute supersede the traditional equitable requirements. *Id.*

■ In this case, the district court determined Iowa Code section 553.12(1) "specially authorized" the issuance of a temporary injunction, as contemplated by rule 321(c). The relevant portion of section 553.12 provides:

> The state or a person who is injured or threatened with injury by conduct prohibited under this chapter may bring suit to:
>
> (1) Prevent or restrain conduct prohibited under this chapter and remove the conduct's effect by injunction. . . .

Consequently, the district court found the plaintiffs only needed to prove the defendants engaged in conduct prohibited under chapter 553 to support the issuance of an injunction. The district court issued the injunction after finding a likelihood that the defendants violated section 553.5 by establishing a monopoly.

Although section 553.12(1) generally allows for injunctive relief as a remedy for a violation under the competition law, the only standard under the statute for granting injunctive relief is that the conduct be prohibited by the competition law. This standard contemplates an adjudication on the merits and considers none of the unique factors that support injunctive relief. If our legislature had wanted to specially authorize the district court under section 553.12(1) to issue a temporary injunction independent of a balancing of the equitable considerations, it would have articulated some standard for the court to apply, considering the extraordinary nature of temporary injunctions. *See Kleman,* 373 N.W.2d at 96. The absence of a standard or directive in section 553.12(1) indicates our legislature intended injunctive relief to be granted or denied within the discretion of the court under the applicable equitable principles. *See* 42 Am. Jur.2d *Injunctions* § 23, at 595.

It is also important to consider that the Iowa Competition Law is patterned after the federal Sherman Act. *Cedar Rapids Bd. of Realtors,* 300 N.W.2d at 128. Both acts are antitrust statutes, prohibiting mo-

nopolies and attempts to monopolize. *See Davies v. Genesis Med. Ctr.*, 994 F.Supp. 1078, 1103 (S.D.Iowa 1998). Iowa Code section 553.2 explicitly requires us to consider federal cases construing applicable sections of the Sherman Act when interpreting our own antitrust statute. *Id.; Neyens v. Roth*, 326 N.W.2d 294, 297 (Iowa 1982); *Cedar Rapids Bd. of Realtors*, 300 N.W.2d at 128; *see* Iowa Code § 553.2 (Chapter 553 "shall be construed to complement and be harmonized with the applied laws of the United States which have the same or similar purpose," and "shall be made to achieve uniform application of the state and federal laws prohibiting ... monopolistic practices"). Thus, our legislature intended the Iowa Competition Law to be construed uniformly with the Sherman Act. *See Neyens*, 326 N.W.2d at 298.

■ Section 26 of the Sherman Act correlates with Iowa Code section 553.12. *See* 15 U.S.C.A. § 26 (1997). That section provides

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief ..., against threatened loss or damage by a violation of the antitrust laws ..., when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by *courts of equity, under the rules governing such proceedings* ....

*Id.* (emphasis added). Unlike section 553.12, section 26 expressly directs the court to consider equitable principles in determining injunctive relief. Nevertheless, this omission does not necessarily evidence our legislature's intent to stray from an application of the traditional equitable doctrines. We should not limit the applicability of equitable principles without a valid and clear legislative mandate. *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 1804, 72 L.Ed.2d 91, 99 (1982) (unless a statute expressly or implicitly restricts a court's equity jurisdiction, a court is to consider the established equitable principles); *Waterfront*

*Comm'n of New York Harbor v. Constr. & Marine Equip. Co.*, 928 F.Supp. 1388, 1397 (D.N.J.1996) (same). The failure of our legislature to mention the equitable power of courts in providing for injunctive relief as a remedy under section 553.12(1) cannot be considered a clear indication of an intent to depart from our traditional equitable doctrines. To the contrary, our legislature has shown it knows how to specifically modify the equitable standards for the issuance of temporary injunctive relief in other statutes. *See* Iowa Code § 20.12(3) (if a violation has occurred or is imminent, "the plaintiff need not show the violation" would cause irreparable injury); § 499.9 (injunction may be obtained "despite the adequacy of any legal or other remedy").

■ When federal statutes authorize injunctive relief, the presumption exists that Congress intended courts to apply equitable principles. *Sharp v. Parents In Cmty. Action, Inc.*, 172 F.3d 1034, 1038 (8th Cir.1999). Thus, our federal courts utilize equitable principles in deciding applications for temporary injunctive relief under section 26 of the Sherman Act. *See, e.g., Boise Cascade Int'l, Inc. v. N. Minnesota Pulpwood Producers Ass'n*, 294 F.Supp. 1015, 1020 (D.Minn.1968); *McKesson & Robbins, Inc. v. Charles Pfizer & Co.*, 235 F.Supp. 743, 746 (E.D.Pa.1964). We can discern no reason to depart from these standards under the Iowa Competition Law.

We conclude that traditional equitable principles must be considered in determining whether a temporary injunction should issue under Iowa's competition law. In addition, courts must consider the likelihood of success on the merits at the final hearing. *See* 42 Am.Jur.2d *Injunctions* § 8, at 566; *see also Kleman*, 373 N.W.2d at 95–96 (citing *Pickard v. Castillo*, 550 S.W.2d 107, 111 (Tex.Civ.App.1977), which required plaintiffs applying for temporary injunction to offer evidence proving their probable subsequent right to a permanent injunction). Not only does this conclusion

comply with the federal courts' interpretation of similar provisions of the Sherman Act, but it also coincides with the practice of our common law in the issuance of injunctions. *See* 2B Norman J. Singer, *Sutherland Statutory Construction* § 50.05, at 162 (6th ed.2000) ("[t]here is a presumption that a statute is consistent with the common law," and thus a statute creating a new "method of enforcing a right which existed before is regarded as cumulative"). Furthermore, there is no language in the statute that specially authorizes temporary injunctions.

## IV.   Conclusion.

Section 553.12(1) does not specially authorize the issuance of a temporary injunction. Accordingly, the district court could only issue a temporary injunction in this case under the first two subparagraphs of rule 321 and after a complete and deliberate consideration of the other corresponding equitable principles.

█ Ordinarily, we could proceed on appeal to determine whether an injunction should have been issued by applying the governing equitable principles the district court failed to apply. However, we are without the benefit of a decision by the district court based on the applicable equitable principles. The district court did not make findings on the equitable factors that comprise a decision to grant or deny a temporary injunction.

Considering the delicate nature of the deliberations necessary for the issuance or denial of a temporary injunction, we think the district court should be given an opportunity to make a decision based upon an application of the correct standard prior to our review of that decision. This will give us an opportunity to properly consider the findings of fact on the applicable equitable factors as well as the decision itself.

Accordingly, we vacate the decision of the district court and remand the case for a decision based on the present record, in light of the traditional equitable principles applicable to the issuance of temporary injunctions. The district court should also reconsider the issue of the likelihood of success of the case on the merits. We do not retain jurisdiction.

### VACATED AND REMANDED.