PIC USA f/k/a Pig Improvement Company, Inc., Appellee,

v.

NORTH CAROLINA FARM PARTNERSHIP, Deitrich Klages, Individually, Joachim Engel, Individually, North Carolina Farm of Wise, L.L.C., and NCF Investments, L.L.C., Appellants.

No. 02–0855.

Supreme Court of Iowa.

Dec. 17, 2003.

John D. Mayne and Missy J. Denton of Mayne, Marks & Madsen, L.L.P., for appellants.

Charles T. Patterson, Margaret M. Prahl and Patrick L. Sealey of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellee.

LAVORATO, Chief Justice.

The defendants appeal from a district court ruling that in effect converted a temporary injunction into a permanent injunction and from a ruling releasing the temporary injunction bond. We reverse in both instances and remand the case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

This injunction proceeding arose out of an alleged breach of a lease agreement between PIC USA, f/k/a Pig Improvement Company, Inc. (PIC) and North Carolina Farm Partnership (NCF), located in North Carolina. The subject of the lease agreement involved land and buildings that NCF owned on which PIC raised and bred genetically superior pigs for use in breeding pigs to be sold for slaughter.

PIC and NCF had a long relationship dating back to the 1980s based on prior lease agreements. The lease in question was dated April 1, 1994 but was not signed until 1996. Because PIC and NCF were unable to reach a new agreement for a new lease, the lease expired by its terms on March 31, 2000.

On June 27, 2000, NCF sued PIC in North Carolina, alleging that PIC removed some of the pigs from the leased facilities, did not return the leased facilities to their original condition, and did not yield possession of the facility and pigs, all in breach of the lease. On January 31, 2001, PIC answered and filed a counterclaim, alleging breach of contract, unjust enrichment, negligent misrepresentation, and unfair and deceptive trade practices. The counterclaim also sought injunctive relief based on NCF's alleged unauthorized use of PIC's intellectual property and trade secrets in the genetically superior pigs.

Although PIC had a claim for injunctive relief, it did not pursue it despite North Carolina's rules that provide for temporary restraining orders. In subsequent discovery, PIC learned through the deposition of Martin Engel, a partner in NCF, that NCF had moved pigs to Iowa and intended to sell them as breeding stock. One of the major issues in this litigation was whether under the terms of the lease NCF could sell the pigs as breeding stock rather than for slaughter.

On November 26, 2001, PIC sought an injunction in the Iowa district court to prevent the sale of the pigs as breeding stock. Besides naming NCF as defendant, the suit also named as defendants, Dietrick Klages, Joachim Engel, and Martin Engel, all partners in NCF. Additionally, the suit named as defendants North Carolina Farm of Wise, L.L.C., a limited liability company located in North Carolina, and NCF Investments, a limited liability company located in North Carolina. The petition alleged that the two limited liability companies are successors in interest to the

rights and liabilities of NCF and the individually named partners. (For convenience we shall hereinafter refer to all of the defendants as NCF.)

The prayer of the Iowa petition asked the court to temporarily, without hearing, and to permanently after hearing, enjoin NCF from selling 450 breeding females located in Iowa to any third person other than for slaughter.

On November 26 District Judge John D. Ackerman entered an ex-parte temporary restraining order (TRO) prohibiting NCF from "removing, transferring, or otherwise disposing or selling any of the 450 breeding females containing genetic material from the State of Iowa." The order also prohibited "the removal and/or transfer of any breeding females within the State of Iowa from their current location until further order of this Court or the North Carolina Court in case # O1CVS15 in Warren County Superior Court."

In the order the court set a hearing for November 30 to determine whether the TRO should continue. The court also required that a copy of the order be presented to the North Carolina judge handling the North Carolina litigation.

On November 30 District Judge Michael S. Walsh continued the hearing to December 7. On December 7 PIC filed a notification of bond, stating that a bond in the amount of $10,000 would be filed as soon as it was received. On December 18 Judge Walsh entered an order approving the bond that PIC intended to file. The order directed the clerk of court to approve the bond which the court believed to be an amount equal to or exceeding the 125% of the liability that PIC would probably incur because of the TRO.

Following the December 7 hearing, Judge Walsh on December 17 modified the TRO to allow NCF to sell for slaughter any animals owned by them currently located in Iowa. The judge also ordered NCF to report to the court the identification of the animals sold and the proceeds from such sale.

On January 4, 2002, Judge Walsh ruled that the TRO and the $10,000 bond would remain in effect. In his ruling, the judge found:

The defendants have placed pigs in Iowa for purposes of sale as breeding stock. These pigs are the progeny of animals that were born of parents having PIC genetics and originating from the breeding herd and location which are the subject of the parties' agreement. The credible evidence demonstrates that these animals have been and will be sold as breeding stock contrary to the terms of the parties' agreement [the lease]. The defendants intend to continue selling these animals as breeding stock if not enjoined. If the defendants are allowed to continue this action, the plaintiff will be irreparably harmed by misappropriation of the genetic markers that are unique to the PIC animals without compensation to the plaintiff. Unauthorized dissemination of genetic material to the plaintiff's competitors through the sale of these animals for breeding would adversely affect the plaintiff's ability to protect its trade secrets and products. PIC has developed the genetic improvements in its animals for more that 40 years and would be subject to irreparable harm if the defendant was permitted to sell animals for breeding when those animals were the product of the plaintiff's long-term genetic improvement efforts.

On April 17 PIC filed a motion for an order requiring NCF to file proof of compliance with the December 17 order. The motion sought proof that the pigs in Iowa had been sold for slaughter. In addition,

PIC alleged in the motion that good cause existed for the court to release the bond. Specifically, the motion stated: "Defendants have not appealed from any of the orders, including the order granting and providing for permanent injunctive relief; i.e. the Court's ruling of January 4, 2002." In its request for relief, PIC asked the court to (1) set a hearing on the motion, (2) order a deadline for NCF to comply with the December 17 order, and (3) release the bond.

On May 6 NCF reported that on December 15, 17, and 18 it had sold 367 pigs for slaughter for a total of $32,258.44. On the same day NCF filed a resistance to PIC's April 17 request to release the bond and in its resistance moved to increase the bond.

On May 22 Judge Walsh ruled on PIC's April 17 motion:

The defendants remain enjoined under the terms of the January 4, 2002, ruling, which has not been vacated or modified and was never appealed. The purpose of a bond is to protect against potential damages that may result from a temporary injunction that was improvidently or erroneously issued and which may be vacated rather than continued. While the defendants remain opposed to the injunction, there *is no pending litigation* that includes the prospect of overturning the injunction granted in this case or establishing damages. *In spite of what label one might put on it, a temporary injunction which, after hearing, was continued indefinitely and which has never been vacated or modified and has never been appealed becomes, for all practical purposes, permanent in nature.*

IT IS THEREFORE THE RULING OF THE COURT that there is no need to maintain a bond to protect against potential damages from an injunction which is *permanent* in nature. The plaintiff's request that the bond posted by the plaintiff be released is sustained.

(Emphasis added).

On the same day, by separate order, Judge Walsh overruled NCF's motion to increase bond, citing reasoning he applied in his ruling releasing PIC's bond.

NCF appealed.

## II. Standard of Review.

██ We recently stated our standard of review governing the issuance of an injunction:

Generally, our standard of review for the issuance of injunctions is de novo. This de novo review is based upon the equitable jurisdiction of the court to issue injunctions. Yet, the decision to issue or refuse "a temporary injunction rests largely [within] the sound discretion of the [district] court." We recognize a temporary injunction is a delicate matter, and the exercise of judicial power to issue or refuse a temporary injunction "requires great caution, deliberation, and sound discretion." Thus, we will not generally interfere with the district court decision unless the discretion has been abused or the decision violates some principle of equity.

*Max 100 L.C. v. Iowa Realty Co.,* 621 N.W.2d 178, 180–81 (Iowa 2001) (citations omitted). "[T]his discretion is a legal one, and, if not based upon sufficient grounds, will be reversed upon appeal." *Swan v. City of Indianola,* 142 Iowa 731, 734, 121 N.W. 547, 549 (1909).

## III. Issues.

Although NCF raises numerous issues, we consider only three because the others either lack merit or were not properly preserved for our review. *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002)

(holding that issues must be both raised and decided by the district court before they will be addressed and decided on appeal). The first issue is whether the district court abused its discretion when it in effect converted the TRO into a permanent injunction without a final hearing on the merits. The second issue is whether the district court abused its discretion in releasing the bond. The last issue is whether the district court abused its discretion in not increasing the bond.

### IV. Did the District Court Abuse its Discretion When it in Effect Converted the TRO into a Permanent Injunction Without a Final Hearing on the Merits?

■ **A. Applicable law.** Iowa Rule of Civil Procedure 1.1502 (formerly rule 321) describes three situations in which a court may issue a temporary injunction. *See* Iowa R. Civ. P. 1.1502. The situation applicable here concerns an act causing great or irreparable harm. Iowa R. Civ. P. 1.1502(1).

■ A party may obtain a temporary injunction as an independent remedy in an equitable action, or as an auxiliary remedy in any action. *Id.* 1.1501. To determine whether the request for injunction is independent or auxiliary, a court need only strike the request for injunction and then ascertain from what is left whether a cause of action remains. *Chrisman v. Schmickle,* 209 Iowa 1311, 1314, 230 N.W. 550, 551 (1930).

■ The standards a court considers in granting temporary injunctions are similar to those for permanent injunctions. *Max 100 L.C.,* 621 N.W.2d at 181. One important exception concerns the burden of proof: temporary injunctions require a showing of the *likelihood* of success on the merits whereas permanent injunctions require *actual* success. *Id.*

■ Another important exception concerns the type of evidence that a court may properly consider. Under our rules, "permanent injunctions are those granted as part of a final judgment, while temporary injunctions are those granted at any prior stage of the proceedings." *Kleman v. Charles City Police Dep't,* 373 N.W.2d 90, 95 (Iowa 1985); *see also* Iowa R. Civ. P. 1.1501 ("An injunction may be granted as part of the judgment; or may be granted by order at any prior stage of the proceedings, and is then known as a temporary injunction."). "Rules of evidence are applied more strictly on final hearing of a cause than on an application for temporary injunction, when evidence that would not be competent to support a perpetual injunction may properly be considered." *Kleman,* 373 N.W.2d at 95.

■ A further exception concerns the status of the court's order for purposes of appeal. Decisions on requests for temporary injunctions are interlocutory in nature. *Wolf v. Lutheran Mut. Life Ins. Co.,* 236 Iowa 334, 344–45, 18 N.W.2d 804, 810 (1945). An appeal of such a decision is therefore interlocutory and for that reason is not allowed as a matter of right. In contrast, an appeal of a permanent injunction after final hearing is allowed as a matter of right. *See* Iowa R.App. P. 6.1(3) ("No interlocutory ruling or decision may be appealed except as provided in rule 6.2 until after the final judgment or order."); 6.2(1) (allowing party aggrieved by an interlocutory ruling or decision to apply to the supreme court to grant an appeal in advance of final judgment provided party meets certain conditions).

■ Because decisions on requests for temporary injunctions are interlocutory, a denial of such a request does not preclude a party from seeking a permanent injunction. A court may have proper-

ly denied a request for temporary injunction even though the same court later grants a permanent injunction after a full trial on the merits. *Iowa City v. Muscatine Dev. Co.*, 258 Iowa 1024, 1033, 141 N.W.2d 585, 591 (1966).

Additionally, because requests for temporary injunctions are interlocutory, a party may request a hearing to dissolve, vacate, or modify the temporary injunction. Iowa R. Civ. P. 1.1509. The rule does not limit the number of times a party may request such a hearing.

■ Once a court issues a permanent injunction following the grant of a temporary injunction, the temporary injunction merges into the permanent one. *Foods, Inc. v. Leffler*, 240 N.W.2d 914, 919 (Iowa 1976).

■ As this court recognized in *Board of Education of Kimballton Independent School v. Board of Education of Audubon County*:

> Generally speaking, the court's action in granting an application for a temporary injunction, or in denying its dissolution on motion, does not deprive the parties of the right to a trial on the merits of their petition seeking or resisting a permanent injunction, nor is it an adjudication for or against such right. Only the dissolution of the temporary injunction was asked in this motion, and relief was restricted to that issue.

260 Iowa 840, 845, 151 N.W.2d 465, 468 (1967); *see also* 42 Am.Jur.2d *Injunctions* § 10, at 568 (2000) ("A final or permanent injunction is perpetual in effect and can be granted only following a final hearing on the merits."). Of course, the parties may agree to consolidate the hearing on the temporary injunction and the permanent injunction. Or the court may order consolidation of both hearings. *See* 43A C.J.S. *Injunctions* § 234, at 511; *see also Quad–City Community News Service, Inc. v. Jebens*, 334 F.Supp. 8, 18 (S.D.Iowa 1971) (parties stipulated that permanent injunctive relief would be determined from same evidence and court entered order to consolidate hearings).

**B. Analysis.** With these principles in mind we turn to the record in this case. In the ex-parte TRO, Judge Ackerman set a hearing to determine if the TRO should continue. Following the entry of the ex-parte TRO, PIC in its brief in support of the temporary injunction stated that it "seeks the continuation of the injunction to preserve the status quo by preventing the sale of those animals as breeding stock until a determination is made in North Carolina on the parties' rights under the contracts." Clearly, PIC understood the sole issue before Judge Walsh on December 7 was whether to continue or dissolve the ex-parte TRO.

Finally, before taking evidence at the December 7 hearing, Judge Walsh stated: "The issue before the Court today is whether or not this temporary injunction should continue or be dissolved." Judge Walsh therefore also clearly understood the issue was whether to continue or dissolve the ex-parte TRO.

Although technically the injunction PIC sought was an independent remedy, in reality the relief sought was auxiliary. It was auxiliary in the sense that PIC sought to maintain the status quo until the North Carolina court could make a determination. This is evident from the very beginning when Judge Ackerman limited the ex-parte TRO "until further order of this Court or the North Carolina Court in case # 01CVS15 in Warren County Superior Court." Also significant is that Judge Ackerman hand wrote the following in the ex-parte TRO: "It is represented to this Court that plaintiff would be unable to secure a similar order from the North

Carolina Court within the time constraints as set forth in the petition. However, a copy of this Order shall immediately be presented to the judge handling the North Carolina lawsuit."

Before the December 7 hearing on whether to continue the ex-parte TRO, PIC filed a brief in support of continuing the TRO. In that brief, PIC wrote the following: "PIC seeks the continuation of the injunction to preserve the status quo by preventing the sale of those animals as breeding stock until a determination is made in North Carolina on the parties' rights under the contracts." In the same brief, PIC represented that the continuation of the TRO would "not interfere in any way with the North Carolina court's disposition of the action and [would] serve to preserve the status quo in Iowa until the case is finally determined in North Carolina."

Following the December 7 hearing, Judge Walsh ordered the parties to file written closing arguments. In its written closing arguments PIC wrote:

[Dr. Johnson's] testimony along with other evidence in the record has clearly met the test of whether PIC as Plaintiff on its counterclaim in North Carolina will prevail on the merits of its counterclaim, with sufficient likelihood to warrant the injunction remaining in place.

Clearly, before and after the December 7 hearing, PIC was acknowledging that the ex-parte TRO was auxiliary to the litigation in North Carolina.

PIC had a change of heart following its motion for injunctive relief in the North Carolina case on April 12, 2002 and Judge Walsh's January 4, 2002 ruling continuing the TRO. In its reply to NCF's resistance for release of bond filed on May 6, 2002, PIC wrote:

The purpose of the injunctive relief sought in this case was to prevent the sale of breeding stock from continuing within the state of Iowa. *It was not to preserve the status quo during the pendency of a North Carolina lawsuit.*

(Emphasis added.)

In his May 22 ruling, which is the subject of this appeal, Judge Walsh wrote: "While [NCF] remain[s] opposed to the injunction, there is no pending litigation that includes the prospect of overturning the injunction granted in this case or establishing damages." Clearly, there was pending litigation in North Carolina that indeed included the prospect of overturning the TRO in Iowa. And once that litigation was completed, the outcome could determine whether the TRO in Iowa should become permanent. This becomes clear from the following events that occurred in the North Carolina litigation.

As mentioned, on April 12, 2002, PIC filed a motion for temporary injunction in the North Carolina litigation. The motion was based on the same allegations contained in PIC's Iowa petition. The motion alleged that Judge Walsh's January 4, 2002 ruling constituted a permanent injunction from which no timely appeal had been taken and therefore resulted in a final judgment. The motion further alleged that for these reasons under the principles of res judicata the North Carolina court was required to issue a similar injunction as that issued in Iowa.

On May 23, 2002, the trial court in the North Carolina proceeding advised the parties it would limit its ruling regarding PIC's motion to the res judicata issue. In a June 6, 2002 ruling, the trial court rejected PIC's res judicata contention. By this time, the trial court had in its possession Judge Walsh's May 22 ruling and all of the other filings in the Iowa case including PIC's brief in support of its request for

temporary injunction filed on December 7, 2001, and a transcript of the December 7 hearing. Significantly, the North Carolina trial court, citing Iowa precedent, found that Judge Walsh's January 4, 2002 ruling was not a final judgment because no final hearing on the merits was ever had. The North Carolina trial court astutely recognized that PIC was attempting to use NCF's failure to appeal the Iowa TRO as a way to elevate a temporary injunction to the status of a permanent injunction. The North Carolina trial court then made the following finding:

> Reduced to essentials, the Iowa Equity Injunction remains what it is—temporary injunction entered before trial on the merits, which, having not been appealed, is, for all practical effects, binding on the defendants only *in Iowa pending the final determination of the issues in this North Carolina litigation,* nothing more, nothing less.

After concluding Judge Walsh's January 4, 2002 ruling was not binding on it, the North Carolina trial court ruled that PIC's motion for temporary injunction remained for hearing.

Following such hearing on June 12, 2002, the North Carolina trial court on August 29, 2002 denied PIC's request for a temporary injunction. In doing so, the trial court—contrary to Judge Walsh's January 4, 2002 ruling—concluded that (1) the lease in question did not restrict the sale of PIC stock for purposes other than for slaughter and (2) any breeding stock of PIC left on NCF's premises after the termination of the lease did not constitute a trade secret.

PIC appealed both the June 6 and August 29, 2002 rulings of the North Carolina trial court. The appeal is now pending in the North Carolina Court of Appeals. On November 14, 2002, that court granted PIC's motion for temporary stay. The order granting the stay provides:

> [NCF is] enjoined from engaging in the sales of any animals containing [PIC] genetic information other than for slaughter purposes pending the outcome of the appeal.

How the North Carolina Court of Appeals determines the issues before it will be outcome determinative as far as the Iowa TRO is concerned. If the North Carolina Court of Appeals agrees with the North Carolina trial court, NCF could use that decision to its advantage in the Iowa litigation. Res judicata principles would aid NCF in seeking a dissolution of the TRO. Such principles would also aid NCF in a final hearing on the merits. Waiting until the proceedings in North Carolina are concluded would accomplish the purpose of the Iowa TRO: to preserve the status quo until "further order of . . . the North Carolina court."

For these reasons we conclude Judge Walsh's May 22, 2002 ruling was an abuse of discretion to the extent it converted the TRO into a permanent injunction without the benefit of a full-blown hearing on the merits. As a result of the conclusion we reach, the TRO remained a TRO. That brings us to the next issue.

## V. Did the District Court Abuse its Discretion in Releasing the Bond?

**A. Applicable law.** Iowa Rule of Civil Procedure 1.1508 provides in relevant part:

> The order directing a temporary injunction must require that before the writ issues, a bond be filed, with a penalty to be specified in the order, which shall be 125 percent of the probable liability to be incurred. Such bond with sureties to be approved by the clerk shall be conditioned to pay all damages which may be

adjudged against the petitioner by reason of the injunction. . . .

Iowa R. Civ. P. 1.1508. The purpose of the bond is to "indemnify the person enjoined or restrained from damage through the use of the writ." *Green v. Hanna*, 232 Iowa 294, 298, 3 N.W.2d 618, 620 (1942).

 Rule 1.1508 only requires a bond when a temporary injunction is granted. It does not require a bond once a permanent injunction is granted. *See* 42 Am. Jur.2d *Injunctions* § 10, at 569 (2000) ("There is no bond requirement in connection with the issuance of a permanent injunction.").

Because the TRO remained a TRO, releasing the bond was an abuse of discretion. On remand the district court shall order PIC to file a bond. That brings us to the last issue.

## VI. Did the District Court Abuse its Discretion in Not Increasing the Bond?

As mentioned, NCF filed a motion to increase the bond. In support of its motion, NCF produced an affidavit of Martin Engel, a partner in NCF. In that affidavit Engel averred that because of the TRO, NCF had been and would continue to be deprived of a significant volume of business in Iowa which could amount to damages of $275,000. NCF contends the district court should therefore have increased the bond to conform to rule 1.1508.

Because of his May 22, 2002 ruling, Judge Walsh concluded there was no further need for a bond. The judge therefore did not decide NCF's motion on the merits. To the extent that the judge ruled there was no need for a bond, the court abused its discretion.

We hesitate to say the court abused its discretion in refusing to increase the bond because the court never ruled on the merits of NCF's motion. We have directed that on remand the district court order PIC to file a bond. Rather than this court ruling on the merits of NCF's motion to increase the bond, we think it would be more appropriate for the district court to do so after allowing the parties opportunity to present evidence on the request.

## VII. Disposition.

In sum, we conclude the district court abused its discretion when it converted the TRO into a permanent injunction without a final hearing on the merits. The purpose of the TRO was to preserve the status quo until resolution of the litigation in North Carolina. That has not occurred. Because the TRO remained a TRO, the court further abused its discretion by releasing the bond. Accordingly, we reverse the district court's decision in both instances.

We remand the case for further proceedings consistent with this opinion. On remand the district court shall order PIC to file a bond at which time NCF shall have the opportunity to again request an increase in bond. The district court shall allow the parties an opportunity to present evidence on the request.

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**