NORTH CAROLINA FARM PARTNERSHIP, NORTH CAROLINA FARM OF WISE, L.L.C. AND NCF INVESTMENTS, L.L.C., PLAINTIFFS v. PIG IMPROVEMENT COMPANY, INC., DEFENDANT

No. COA03-328

(Filed 16 March 2004)

## 1. Appeal and Error— appealability—denial of preliminary injunction—trade secrets and collateral estoppel

An order denying a preliminary injunction was interlocutory but immediately reviewable because it raised issues of collateral estoppel and trade secrets and affected a substantial right.

## 2. Collateral Estoppel and Res Judicata— collateral estoppel—preliminary injunction

An Iowa preliminary injunction was not binding on a North Carolina trial court under collateral estoppel because the Iowa injunction remained preliminary in nature.

## 3. Injunctions; Unfair Trade Practices— genetic information in pigs—not trade secret—preliminary injunction denied

Defendant was not entitled to a preliminary injunction to protect the genetic information in pigs as a trade secret because it failed to provide specific scientific evidence to support its allegations. N.C.G.S. § 66-152(3).

Appeal by defendant from orders filed 10 June 2002 and 3 September 2002 by Judge Howard E. Manning, Jr. in Warren County Superior Court. Heard in the Court of Appeals 19 November 2003.

*Boxley, Bolton & Garber, L.L.P., by Ronald H. Garber; and The Law Office of John T. Benjamin, Jr., by John T. Benjamin, Jr., for plaintiff-appellees.*

*Parker, Poe, Adams & Bernstein L.L.P., by Jack L. Cozort, Robert H. Tiller, and John J. Butler, for defendant-appellant.*

BRYANT, Judge.

Pig Improvement Company, Inc. (PIC) appeals orders filed 10 June 2002 and 3 September 2002 denying its motion for a preliminary injunction.

**N.C. FARM P'SHIP v. PIG IMPROVEMENT CO.**

[163 N.C. App. 318 (2004)]

In 1996, North Carolina Farm Partnership (NCF), a North Carolina partnership, and PIC, a Wisconsin corporation, entered into a contract whereby NCF agreed to lease pigs and facilities in Warren County, North Carolina for pig breeding and nursery to PIC. At the expiration of the lease term, NCF was to retain possession of the pigs and the facilities, subject to the contractual options available to both parties on or before the termination of the lease.

Following expiration of the lease on 31 March 2000, NCF filed a complaint in Wake County, North Carolina on 27 July 2000 alleging breach of the lease terms by PIC. In its answer and counterclaim, PIC in turn alleged NCF breached the lease terms by continuing, "after termination of the lease, to use the progeny of [pigs] in the breeding herd as breeding stock in [NCF's] own herd and/or [by] transferr[ing] and/or s[elling] said progeny to other herds, rather than selling said progeny to slaughter as permitted in the lease." The answer and counterclaim also sought injunctive relief because "[t]he genetics incorporated into [PIC's] breeding animals are confidential, proprietary and secret information." In January 2001, this case was transferred to Warren County.

*Iowa Proceedings*

While the case was pending in North Carolina, PIC filed a "Petition for Temporary Injunction" in Iowa on 26 November 2001. PIC attached to the motion the 1 November 2001 deposition of Martin Engel, a NCF partner, stating NCF had placed 450 female pigs, progeny of the herd inventory under the NCF-PIC lease, in Iowa with the intent to sell them for breeding. On 26 November 2001, the Iowa trial court issued a temporary restraining order, enjoining NCF, "[p]ending a final decision of the [c]ourt, . . . from removing, transferring, or otherwise disposing or selling any of the 450 breeding females containing [PIC pig] genetic material from the State of Iowa."

On 7 December 2001, the Iowa trial court held a hearing to consider whether the temporary restraining order granted on 26 November 2001 should be continued or dissolved. Following the hearing, the Iowa trial court issued an order on 4 January 2002, keeping the restraining order in effect. On 22 May 2002, the Iowa trial court issued an order releasing the earlier injunction bond. In that order, the trial court further ruled:

> [NCF] remain[s] enjoined under the terms of the January 4, 2002[] ruling, which has not been vacated or modified and was

never appealed. The purpose of a bond is to protect against potential damages that may result from a temporary injunction that was improvidently or erroneously issued and which may be vacated rather than continued. . . . In spite of what label one might put on it, a temporary injunction which, after hearing, was continued indefinitely and which has never been vacated or modified and has never been appealed becomes, for all practical purposes, permanent in nature.

NCF appealed, and the Iowa Supreme Court held that the Iowa trial court abused its discretion "when it in effect converted the TRO [(temporary restraining order)] into a permanent injunction without a final hearing on the merits." *PIC USA v. N.C. Farm P'ship*, 672 N.W.2d 718, 723, 726 (Iowa 2003). The Iowa Supreme Court concluded "the TRO remained a TRO."[1] *Id.* at 726.

### North Carolina Proceedings

On 12 April 2002, PIC filed a motion for a temporary injunction in Warren County, North Carolina, alleging NCF:

transferred swine within the [S]tate of North Carolina . . . and continue[s] to use and sell [them] for breeding purposes . . . contrary to the terms of the [lease]. . . . Actions and conduct of [NCF] . . . are occurring within the State of North Carolina[,] and it is appropriate and necessary for the [trial court] to exercise jurisdiction and issue appropriate injunctive relief.

The North Carolina trial court requested the parties to submit arguments on the effect of the Iowa injunctive orders on the North Carolina action under the doctrines of collateral estoppel and res judicata. In an order filed 10 June 2002, the trial court denied PIC's motion for a temporary injunction on the basis that it was not bound by the 26 November 2001 and 4 January 2002 Iowa orders since they authorized only a preliminary injunction that did not result from a trial on the merits.

In an order filed 3 September 2002, the North Carolina trial court again denied PIC's motion for a preliminary injunction after addressing two additional grounds relied upon by PIC: misappropriation of a trade secret and breach of contract. On the trade secret issue, the trial court concluded:

---

1. The decision of the Iowa Supreme Court was not entered until after the filing of PIC's appeal to the North Carolina Court of Appeals.

> The [c]ourt accepts PIC's contention, as supported by the evidence, that each pig contains unique genetics in its make-up and that the genetics and breeding processes which led to the breeding of the pigs containing such genetics are valuable intellectual property. However, this fact does not make a pig[] a trade secret. Because of the pig's genetic makeup, it may be a valuable pig, but it is not a trade secret.

On the contract issue, the trial court concluded NCF was not restricted in its use of the breeding herd left on the leased premises at the expiration of the lease.

---

The issues are whether: (I) collateral estoppel operates to bar relitigation of the issues addressed in the Iowa orders granting PIC a temporary injunction and (II) PIC has shown irreparable harm from the misappropriation of a trade secret.

[1] An appeal of a denial of a preliminary injunction is interlocutory and generally not immediately reviewable. *N.C. Elec. Membership Corp. v. N.C. Dept. of Econ. & Comm. Dev.*, 108 N.C. App. 711, 716, 425 S.E.2d 440, 443 (1993) (citing *A.E.P. Indus. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983)). In the case *sub judice*, however, our review of PIC's appeal is proper as it raises issues of collateral estoppel and trade secrets and consequently affects a substantial right. *See McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 51, 542 S.E.2d 227, 231 (2001) (a denial of summary judgment based on collateral estoppel may affect a substantial right and is thus immediately appealable); *N.C. Elec. Membership*, 108 N.C. App. at 716, 425 S.E.2d at 443 (an agency's decision requiring disclosure of documents alleged to contain trade secrets affects a substantial right and is thus immediately appealable).

I

*Collateral Estoppel*

[2] PIC first argues the Iowa injunction was binding on the North Carolina trial court under the doctrine of collateral estoppel.[2] In its brief, PIC concedes the Iowa court issued a preliminary injunction yet contends NCF's failure to request reconsideration of or to appeal the

---

2. The trial court considered PIC's argument on collateral estoppel and res judicata. In its brief to this Court, PIC argued the issue of collateral estoppel only and has therefore abandoned the issue of res judicata for appeal. *See* N.C.R. App. P. 28(a) ("[q]uestions raised by assignments of error . . . but not then presented and discussed in a party's brief, are deemed abandoned").

injunction transformed it into a final judgment on the merits. We note that since the filing of the briefs in this case, the Iowa Supreme Court has ruled that the very orders at issue here retained their temporary status and never became final because they were not based on a hearing on the merits. *See PIC USA*, 672 N.W.2d at 726. As the Iowa Supreme Court's reasoning comports with this State's law on collateral estoppel and final judgments, we likewise hold that the Iowa injunction remained preliminary in nature. *See State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 414, 474 S.E.2d 127, 128 (1996) ("[u]nder the doctrine of collateral estoppel, or issue preclusion, 'a final judgment on the merits prevents relitigation of issues actually litigated and necessary to the outcome of the prior action in a later suit involving a different cause of action between the parties or their privies' ") (citation omitted); *Milner Airco, Inc. v. Morris*, 111 N.C. App. 866, 868, 433 S.E.2d 811, 813 (1993) ("[t]he purpose of a preliminary injunction is to preserve the status quo of the parties pending trial on the merits") (emphasis omitted). Accordingly, the North Carolina trial court did not err in concluding that the Iowa temporary injunction has no binding effect with respect to the issues presented in this case.

II

*Trade Secret*

**[3]** Alternatively, PIC contends it was entitled to a preliminary injunction because the genetic information contained in the pigs is a trade secret at risk of being misappropriated by NCF.

"The scope of appellate review in the granting or denying of a preliminary injunction is essentially *de novo*. 'An appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself.' " *Wade S. Dunbar Ins. Agency, Inc. v. Barber*, 147 N.C. App. 463, 467, 556 S.E.2d 331, 334 (2001) (quoting *A.E.P.*, 308 N.C. at 402, 302 S.E.2d at 760). The trial court's ruling, however, is presumed to be correct, and the appellant bears the burden to show error. *Id.*

"Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by

persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C.G.S. § 66-152(3) (2003).

The "actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of [an] action." N.C.G.S. § 66-154(a) (2003). Because a preliminary injunction is "an extraordinary measure," it is to be issued only upon a showing by the movant that: (1) there is a "*likelihood*" of success on the merits of his case" and (2) the movant will likely suffer "irreparable loss unless the injunction is issued, or . . . , in the opinion of the Court, issuance is necessary for the protection of his rights during the course of litigation." *Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E.2d 566, 574 (1977). If irreparable injury is not shown, the preliminary injunction will be denied. *Telephone Co. v. Plastics, Inc.*, 287 N.C. 232, 236, 214 S.E.2d 49, 52 (1975); *see Coble Dairy v. State ex rel. Milk Comm'n*, 58 N.C. App. 213, 214, 292 S.E.2d 750, 751 (1982).

In this case, PIC fails to meet the element of irreparable harm and is therefore not entitled to a preliminary injunction.

> An applicant for a preliminary injunction must do more than merely allege that irreparable injury will occur. The applicant is required to set out with particularity facts supporting such statements so the court can decide for itself if irreparable injury will occur.

*Telephone Co.*, 287 N.C. at 236, 214 S.E.2d at 52; *see Coble*, 58 N.C. App. at 214, 292 S.E.2d at 751. PIC does not cite, and our research did not reveal, any cases involving the application of trade secrets law to animals. Furthermore, PIC provided two affidavits containing general allegations but no specific scientific evidence to support those allegations. *See* Telephone Co., 287 N.C. at 236, 214 S.E.2d at 52 (the movant was not entitled to a preliminary injunction because it did not provide information on how the opposing party's acts affected its income); *Coble*, 58 N.C. App. at 214, 292 S.E.2d at 751 (unsupported statements in the affidavits of two employees of a corporation that requested a preliminary injunction were insufficient to show irreparable harm). PIC's technical director in one affidavit states generally that PIC has used "molecular biological research and . . . selective breeding" to develop favorable traits in pigs and that PIC's competi-

tors could use the pure-line pigs in NCF's possession to duplicate those traits. The other affidavit, by a doctorate holder who provides no information on his specialty and other credentials, simply states that the breeding of great-grandparent female pigs in NCF's possession with pure-line boars would produce offspring with "one-half of the positive genetic qualities and characteristics" of the sow.

On the other hand, NCF provided a detailed affidavit of a North Carolina State University professor, explaining the current selection methodology for breeding swine, the feasibility of obtaining PIC pigs on the market, and the degree of difficulty competitors would face in attempting to discover and exploit favorable traits in PIC pigs. The professor, a published Professor of Animal Science and Genetics, has taught at the university since 1959 and been involved in research in the swine industry for more than thirty years. According to the professor: selective breeding is the exclusive method of genetic improvement in the swine industry and is not a secret; "[a]ny competitor could buy a[] sample of PIC product on the open market and test against these pigs"; and PIC's competitors would not be able to "work backwards to figure out what [PIC] did to develop [a] pig" or "to take the pigs in the possession of [NCF] and determine whether the PIC line was a superior line of pigs without first performing years of tests."

As PIC fails to show irreparable harm, it cannot overcome the presumption that the trial court's ruling denying preliminary injunction was correct. Therefore, PIC's assignment of error is overruled. We do not address the issue of breach of contract for the reason that, even if breach of contract were assumed, PIC's failure to show (1) the existence of a trade secret and (2) the likelihood of irreparable harm precludes the grant of a preliminary injunction. *See A.E.P.*, 308 N.C. at 406, 302 S.E.2d at 762 (equitable relief such as an injunction is generally not granted due to breach of contract when an adequate remedy at law for money damages is available); *Light and Water Comrs. v. Sanitary District*, 49 N.C. App. 421, 423, 271 S.E.2d 402, 404 (1980) ("[w]here there is a full, complete and adequate remedy at law, the equitable remedy of injunction will not lie").

Affirmed.

Judges CALABRIA and ELMORE concur.