# IN THE SUPREME COURT OF IOWA

No. 16–1323

Filed March 10, 2017

Amended May 22, 2017

**PATRICK ALAN NEY,**

Appellant,

vs.

**JOHN GLENN NEY,**

Appellee.

---

Appeal from the Iowa District Court for Dickinson County, David A. Lester, Judge.

Plaintiff appeals district court's dismissal on grounds of subject matter jurisdiction. **REVERSED AND REMANDED.**

Christopher R. Kemp of Kemp & Sease, Des Moines, and John M. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellant.

Joseph L. Fitzgibbons and Matthew T.E. Early of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.

**HECHT, Justice.**

Two brothers stipulated to the entry of an order enjoining them from having contact with each other. When one of them subsequently sought a contempt order against the other for violation of the injunction, the district court dismissed the action on the ground it lacked subject matter jurisdiction to enter or enforce a consent order barring contact between parties. On our review, we conclude the district court had jurisdiction to issue the injunction. We therefore reverse the dismissal and remand the case for further proceedings.

## I. Background Facts and Proceedings.

Patrick Alan Ney and John Glenn Ney are brothers with an acrimonious relationship. In April 2012, Patrick filed a "Petition for Injunctive Relief" seeking a temporary injunction against John. The petition alleged that John had a history of assaulting Patrick, trespassing on his property, and harassing him and his family. Patrick alleged he had requested law enforcement's help multiple times to no avail. The petition further alleged John had recently broken into Patrick's house while drunk but fled before law enforcement arrived.[1] In support of his claim for a temporary injunction, Patrick alleged the ongoing harassment by John caused irreparable damage that law enforcement officers had not been able to prevent. The prayer for relief requested John be prohibited from entering Patrick's property or threatening, assaulting, stalking, molesting, attacking, harassing, or communicating with Patrick and his family.

---

[1]Patrick testified by affidavit in support of his application for contempt that John was charged with trespassing as a consequence of this conduct but that charge was dropped in exchange for a guilty plea on an associated OWI charge.

On June 25, 2012, the parties entered into a "Stipulation and Agreement" asking the court to incorporate the terms of their agreement in an order for injunctive relief. The parties agreed they would,

> a. Not threaten, assault, stalk, molest, attack, harass, or otherwise abuse one another;
>
> b. Stay away from each other's residences and not be in each other[']s presence except in a courtroom during court hearings;
>
> c. Not communicate with each other in person or through any means including third persons [except] . . . . through legal counsel;
>
> d. Not communicate with any member of each other[']s family[,] . . . [including] spouses, children, grandchildren, and in-laws.

The district court approved the terms of the agreement and issued an order (2012 order) on the same day incorporating the terms of the stipulated agreement and directing that "[t]he parties shall have no further communication with one another."

On March 30, 2016, Patrick filed an "Application for Contempt of Court" alleging John had intentionally, willfully, and repeatedly violated the court's 2012 order. In an attached affidavit, Patrick urged the court to find John in contempt of the order because on four separate occasions, John engaged in "abusive contact" against Patrick and his family, including one instance in which John "threatened to pull his firearm out."

The district court found it had personal and subject matter jurisdiction and issued an order to show cause on March 31, 2016. John filed a motion to dismiss the proceeding, asserting the 2012 order was void and unenforceable because the court lacked subject matter jurisdiction to grant the injunction.

In July 2016, after conducting an unrecorded telephonic hearing and reviewing the briefs, the district court granted John's motion to dismiss. The court concluded the injunction Patrick sought to enforce was void because the issuing court lacked subject matter jurisdiction to issue injunctive relief. In reaching its decision, the district court reasoned that Iowa Code section 664A.2(2) (2011) prescribes the only circumstances in which a district court has jurisdiction to issue a protective order in a civil proceeding.[2] Concluding the 2012 order purported to issue a protective order in a civil proceeding, the court reasoned that the order was void because the conduct it restrained was not among the grounds for which protective orders are specifically authorized under Iowa Code section 664A.2(2). The court therefore determined the 2012 order was void and could not be enforced through contempt proceedings.

Patrick filed a notice of appeal on August 4, 2016. We retained the appeal to decide whether the district court erred in concluding the 2012 order was void for lack of subject matter jurisdiction.

## II. Standards of Review.

We review a district court's ruling on subject matter jurisdiction for correction of errors at law. *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013); *see also* Iowa R. App. P. 6.907. Similarly, we review a ruling on a motion to dismiss for correction of errors at law. *Hedlund v. State*, 875 N.W.2d 720, 724 (Iowa 2016). When reviewing the propriety of an injunction, we give weight to the district court's findings of fact. *Matlock v. Weets*, 531 N.W.2d 118, 122 (Iowa 1995).

---

[2]Iowa Code section 664A.2(2) provides that "[a] protective order issued in a civil proceeding shall be issued pursuant to chapter 232, 236, 598, or 915." Iowa Code § 664A.2(2).

### III. Analysis.

**A. The Court's Equitable Jurisdiction.** We first consider whether the district court had equitable jurisdiction under the Iowa Constitution to grant injunctive relief under the circumstances presented here. The first clause of article V, section 6 of the Iowa Constitution vests district courts with legal and equitable jurisdiction and provides that those jurisdictions "shall be distinct and separate." Iowa Const. art. V, § 6. That clause gives district courts jurisdiction over equitable and common law actions. The second clause of article V, section 6 vests district courts with "jurisdiction in civil and criminal matters arising in their respective district, in such manner as shall be prescribed by law." *Id.* Under that clause, the constitution confers upon district courts jurisdiction over civil and criminal cases—jurisdiction that is further delineated by statute.

The court's equitable jurisdiction is recognized and implemented by the Iowa Rules of Civil Procedure. *See* Iowa R. Civ. P. 1.1501–1.1511. Our rules recognize that injunctive relief is available as an independent remedy in equitable proceedings and authorize injunctive relief as an auxiliary remedy in any action. *Id.* r. 1.1501. A party may request an injunction by filing a petition for injunctive relief and a supporting affidavit demonstrating the party is entitled to injunctive relief. *Id.* r. 1.1502.

Petitions for injunctive relief generally invoke the court's equitable jurisdiction. *See Sear v. Clayton Cty. Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999). They may invoke the court's statutory jurisdiction, however, if the general assembly has "impose[d] a duty to grant an injunction by specifying conditions in a statute." *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181 (Iowa 2001). "When this is

done, the conditions specified in the statute supersede the traditional equitable requirements." *Id.*

A court exercising equitable jurisdiction generally has the power to identify the relevant equities and fashion an appropriate remedy. *See In re Marriage of Gallagher*, 539 N.W.2d 479, 481 (Iowa 1995). Yet courts of equity are cautious in granting injunctive relief. *See Matlock*, 531 N.W.2d at 122. Generally, a party seeking an injunction must prove "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is [not another] adequate [means of protection] available." *Sear*, 590 N.W.2d at 515.

Under the first prong, a party seeking an injunction must prove intervention is necessary to protect rights cognizable in equity that have been invaded or threatened with invasion. *In re Langholz*, 887 N.W.2d 770, 779 (Iowa 2016); *Matlock*, 531 N.W.2d at 123. We have previously recognized personal interests such as freedom from harassment and stalking as rights cognizable in equity and eligible for protection through injunctive relief upon proper proof. *See Opat v. Ludeking*, 666 N.W.2d 597, 605 (Iowa 2003) (affirming injunctive relief restraining former friend from harassing the plaintiff); *see also Matlock*, 531 N.W.2d at 123 (affirming permanent injunction enjoining former boyfriend from stalking and harassing the plaintiff).[3]

---

[3]Our position is consistent with the modern rule that personal rights are cognizable in equity. *See, e.g., Siggelkow v. State*, 731 P.2d 57, 60–62 (Alaska 1987) (holding court could issue no-contact order within a divorce decree pursuant to inherent equitable authority). We reject the archaic rule that personal rights are not cognizable in equity. *See, e.g., Bank v. Bank*, 23 A.2d 700, 705 (Md. 1942) (denying equitable jurisdiction for protection of rights of personal nature); *see also* A.W. Gans, Annotation, *Jurisdiction of Equity to Protect Personal Rights: Modern View*, 175 A.L.R. 438, §§ 11, 21 (originally published 1948), Westlaw (explaining that *Bank v. Bank* is "one of the few modern cases in which it can be said that a court actually or seemingly

It is also well-established that "a court of equity might properly intervene and grant a remedy by way of injunction to prevent repetition of [a] trespass, and to stop the unwarranted interference of plaintiff's right to the use and possession of his own property" rather than continually "require the plaintiff to continue to institute an action of forcible entry and detainer to remove the defendant from the premises." *Usailis v. Jasper*, 222 Iowa 1360, 1363, 271 N.W. 524, 526 (1937); *see also Hall v. Henninger*, 145 Iowa 230, 237–38, 121 N.W. 6, 8–9 (1909).

Under the second prong, a district court generally may not issue an injunction unless substantial injury will result from the invasion of the right or if substantial injury is to be reasonably apprehended to result from a threatened invasion of the right. *Matlock*, 531 N.W.2d at 122. "Before granting an injunction, the court should carefully weigh the relative hardship which would be suffered by the enjoined party upon awarding injunctive relief." *Id.*; *see also Sear*, 590 N.W.2d at 515.

The third prong requires a party seeking an injunction to prove there is not another adequate means of protection available. *See Sear*, 590 N.W.2d at 515. This limiting principle teaches that an injunction can only issue if the available legal remedies are inadequate to avoid the substantial injury. *Berry Seed Co. v. Hutchings*, 247 Iowa 417, 422, 74 N.W.2d 233, 236 (1956); *see also Martin v. Beaver*, 238 Iowa 1143, 1148, 29 N.W.2d 555, 558 (1947) ("[C]hancery will not intervene merely to better such remedy as the Legislature has deemed sufficient."). We consider the available remedies at law inadequate if the character of the injury is such "that it cannot be adequately compensated by damages at law, . . . occasion[s] [a] constantly recurring grievance which cannot be

_____

denied existence of equitable jurisdiction for the protection of rights of a personal nature").

removed or [otherwise] corrected," or would result in a multiplicity of suits or interminable litigation. *Martin*, 238 Iowa at 1148, 29 N.W.2d at 558. Moreover, an injunction cannot prevent acts already prohibited by criminal statute unless the acts are connected with the violation of a private right. *See id.* at 1150, 29 N.W.2d at 559.

We conclude the district court had subject matter jurisdiction to grant injunctive relief enjoining Patrick and John from entering each other's property or otherwise contacting each other. As noted above, the court's power to issue the injunction was incident to its equitable jurisdiction. *See Sear*, 590 N.W.2d at 515.

Although the injunction was issued within a consent judgment, it was still within the district court's equitable jurisdiction. *See World Teacher Seminar, Inc. v. Iowa Dist. Ct.*, 406 N.W.2d 173, 176–77 (Iowa 1987) (upholding injunctive relief that "dispose[d] of the controverted issues within the litigation").[4] When an injunction is issued pursuant to a consent judgment, the relevant inquiry is "whether the provisions upon which the parties have agreed constitute an appropriate and legally approved method of disposing of the contested issues in the litigation."

---

[4]There is no difference for purposes of our analysis in this case in the effect of a valid injunction issued after a trial on the merits under our three-prong analysis and one issued by consent judgment. A consent judgment is a judgment willingly entered by the court to which the parties consented and that contains terms and provisions selected by the parties to the action. 49 C.J.S. *Judgments* § 227, at 262 (2009). Parties may either stipulate to issues of fact or concede entire issues in the litigation. *In re Prop. Seized on or About Nov. 14–15, 1989*, 501 N.W.2d 482, 485 (Iowa 1993). Although consent judgments feature elements of a contract, they are generally treated like other judgments. *See* Tom R. Scott, *Judgment—Contracts—Specific Performance—Consent Judgment Enforceable by Mandatory Injunction*—Wagner v. Warnasch*, 295 S.W.2d 890 (Tex. Sup. Ct. 1956)*, 35 Tex. L. Rev. 864, 865–66 (1957). As with judgments based on adjudications of the merits, consent judgments imposing injunctions may be enforced through contempt proceedings and have been enforced in that way in several contexts, including securities litigation, intellectual property disputes, family law litigation, and more. *See, e.g.*, *FTC v. Lane Labs-USA, Inc.*, 624 F.3d 575, 584–85 (3d Cir. 2010); *United States v. Quade*, 563 F.2d 375, 378–79 (8th Cir. 1977); *Matrix Essentials v. Quality King Distribs., Inc.*, 346 F. Supp. 2d 384, 386, 390–91 (E.D.N.Y. 2004).

*Id.* at 176. "It is not necessary in order to uphold the validity of a consent decree that the solutions therein contained be those the court itself would have adopted if it were adjudicating the controversy." *Id.*

Here, Patrick pled a prima facie case for an injunction in his petition for injunctive relief; John consented to the imposition of Patrick's requested injunctive relief; and the district court granted the requested relief by issuing a consent judgment. Thus, the district court properly issued the injunction in this case.

In his 2012 petition for injunctive relief, Patrick alleged John violated his personal right to be free from harassment and physical assault and his property right to be free from trespass. As we noted above, the personal right to be free from harassment and physical assault and the property right to be free from trespass are both rights cognizable in equity, and a court of equity may employ injunctive relief to remedy violations or threatened violations of those rights upon proper proof. *See Opat*, 666 N.W.2d at 605; *Usailis*, 222 Iowa at 1363, 271 N.W. at 526. Thus, we find Patrick advanced interests eligible for protection under the district court's equitable jurisdiction in satisfaction of the first prong.

Patrick also claimed a substantial injury under the second prong of our analysis. His petition for injunctive relief claimed John had grabbed Patrick by the throat, physically assaulted him, repeatedly trespassed, threatened the plaintiff and his family, invaded Patrick's home while drunk, and harassed Patrick and his family. Because these injuries alleged by Patrick were significant, extensive, and ongoing, we conclude they were substantial and satisfied the second prong of the analytical framework for the exercise of the court's equitable jurisdiction.

Finally, Patrick's 2012 petition asserted the absence of an adequate remedy at law under the third prong of our analytical framework. Despite the previous involvement of law enforcement officers responding to Patrick's complaints, John persisted in his troublesome actions, thus evidencing that the general deterrence provided by our criminal laws was not adequate to protect Patrick. Moreover, had Patrick separately litigated each of John's torts, it would have resulted in "a multiplicity of suits or . . . interminable litigation." *Martin*, 238 Iowa at 1148, 29 N.W.2d at 558. Thus, there was a sufficient basis to conclude Patrick lacked an adequate remedy at law for John's conduct. Accordingly, we conclude the third prong of our analytical framework was also satisfied when the 2012 consent order was entered.

The district court had equitable jurisdiction to grant injunctive relief in the 2012 order. Because Patrick pled a prima facie case for an injunction and John stipulated to the imposition of the requested injunctive relief, the district court had authority to grant injunctive relief through a consent judgment.

**B. Effect of Section 664A.2(2).** We next turn to the question of whether Iowa Code section 664A.2(2) limits the district court's equitable jurisdiction to issue injunctions in personal disputes between family members. In Iowa, we distinguish between subject matter jurisdiction and jurisdiction of the case. *Schaefer*, 841 N.W.2d at 80 n.13; *see also Alliant Energy-Interstate Power & Light Co. v. Duckett*, 732 N.W.2d 869, 874 n.4 (Iowa 2007). Subject matter jurisdiction is "the authority of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *Schaefer*, 841 N.W.2d at 80 n.13 (quoting *Christie v. Rolscreen*, 448 N.W.2d 447, 450 (Iowa 1989)).

Jurisdiction of the case refers to a court's "authority to hear the particular case." *Christie*, 448 N.W.2d at 450.

This distinction is important because although a statute cannot deprive a court of its constitutionally granted subject matter jurisdiction, it can affect the jurisdiction of the case by prescribing specific parameters of the court's authority to rule on particular types of matters. *See Max 100 L.C.*, 621 N.W.2d at 181 ("[T]he legislature may impose a duty to grant an injunction by specifying conditions [under which an injunction must be granted] in a statute. When this is done, the conditions specified in the statute supersede the traditional equitable requirements." (Citation omitted.)); *see also Mensch v. Netty*, 408 N.W.2d 383, 386 (Iowa 1987) ("[C]ourts of equity are bound by statutes and follow the law in absence of fraud or mistake."). Further, while parties cannot waive the absence of subject matter jurisdiction, a defect in the court's jurisdiction of the case can be obviated by consent, waiver, or estoppel. *In re Marriage of Seyler*, 559 N.W.2d 7, 10 n.3 (Iowa 1997) (citing *State v. Mandicino*, 509 N.W.2d 481, 482–83 (Iowa 1993), which overruled cases to the contrary).

In this case, Iowa Code section 664A.2(2) does not eliminate the district court's equitable jurisdiction to grant injunctive relief when the grounds for such relief are established. The statute merely imposes a duty to grant an injunction when the conditions of Iowa Code section 664A.2(2) are met. *See* Iowa Code § 664A.2(2) (providing that "[a] protective order issued in a civil proceeding shall be issued pursuant to chapter 232, 236, 598, or 915."). The statute defines "protective order" narrowly:

> [1] a protective order issued pursuant to chapter 232, [2] a court order or court-approved consent agreement entered pursuant to chapter 236, including a valid foreign protective

12

order under section 236.19, subsection 3, [3] a temporary or permanent protective order or order to vacate the homestead under chapter 598, or [4] an order that establishes conditions of release or is a protective order or sentencing order in a criminal prosecution arising from a domestic abuse assault under section 708.2A, or [5] a civil injunction issued pursuant to section 915.22.

*Id.* § 664A.1.

Notably, the civil contexts in the definition of "protective order" are the same ones listed in Iowa Code section 664A.2(2). Thus, chapter 664A does not govern protective orders issued under other provisions, such as Iowa Rule of Civil Procedure 1.504, which addresses protective orders for relief from oppressive, unreasonable, or unduly expensive discovery requests by requesting a protective order from such requests. Iowa R. Civ. P. 1.504; *see also*, 8 Tom Riley & Peter C. Riley, *Iowa Practice Series™*, *Civil Litigation Handbook* § 50:7, at 577 (2016 ed.). Neither does it curtail the court's power or authority to issue injunctions pursuant to the district court's equitable jurisdiction, for they are not among the scenarios for which a "protective order" is authorized under chapter 664A.

When a party requests a protective order under Iowa Code chapters 232, 236, 598, and 915, the district court is bound to follow the statutory framework established in chapter 664A. *See Max 100 L.C.*, 621 N.W.2d at 181 (noting "conditions specified in [a] statute supercede the traditional equitable requirements"). But this case does not involve a protective order issued under any of those Code chapters. Accordingly, Iowa Code section 664A.2(2) does not limit the court's equitable jurisdiction under the circumstances of this case.

**C. Conclusion.** We conclude the 2012 order was within the district court's equitable jurisdiction. The district court erred in concluding Iowa Code section 664A.2(2) deprived the district court of

that equitable jurisdiction. Thus, we reverse the district court ruling dismissing the action and remand for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellee.

**REVERSED AND REMANDED.**