# IN THE COURT OF APPEALS OF IOWA

No. 18-0042
Filed April 3, 2019

**TECH PROFESSIONAL CENTRE CONDOMINIUM ASSOCIATION,**
Plaintiff-Appellee/Cross-Appellant,

**vs.**

**APEX HOLDINGS, L.L.C. and JENS BAKER,**
Defendants-Appellants/Cross-Appellees.

_____

Appeal from the Iowa District Court for Scott County, Mark J. Smith, Judge.

In this consolidated appeal, the parties both challenge the district court's order entering judgment in favor of plaintiff. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Paul J. Bieber of Gomez May LLP, Davenport, for appellants.

Michael J. Meloy of Meloy Law Office, Bettendorf, for appellee.

Heard by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Judge.**

An owner of two condominiums modified the exterior doors and windows of the units. The condominium association sued the owner and the owner's registered agent for breach of association rules, bylaws, and the statute governing condominiums. Following trial, the district court ruled in favor of the association and ordered the owner to return the units to their original condition. The court declined to grant the association's request for attorney fees. The owner and the association appeal.

## I.    *Background Facts and Proceedings*

Tech Professional Centre Condominium Association ("Association") administers a condominium complex in Bettendorf. Among other things, the Association is responsible for "[c]are, upkeep, and surveillance of the property and the general common elements and facilities." The "general common elements" of the condominium complex are to "be owned by all the unit owners as tenants in common."

Each condominium unit owner is "automatically" a member of the Association and remains a member until "ownership ceases." Unit owners are responsible for the internal maintenance and repair of their units, including "water, light, gas, power, sewage, telephones, air conditions, sanitary installations, doors, windows, lamps and all other accessories." Unit owners are not to "make structural modifications or alterations in [their] unit installations located therein without receiving prior written approval from the Association."

Apex Holdings, LLC, through its registered agent Jens Baker (collectively, "Apex"), purchased two condominium units and leased them for commercial use.

When the units became vacant, a daycare facility expressed an interest in renting them. The Bettendorf fire marshal determined the exterior doors were too close together for operation of a daycare center. Apex made plans to move the doors.

Baker conceded he did not convene a board meeting to notify the Association of his renovation plans or submit a written modification request. Instead, he "made the . . . various owners aware that these changes were being required by the fire department" during an "impromptu meeting" behind the building. According to Baker, the subject of the doors again arose at a subsequent "more formal meeting" convened for an entirely different purpose. During the meeting, one of the owners asked Baker, "[H]ey, what's going on with your day care?" Baker responded by "mention[ing] . . . [t]hat the doors . . . needed to be relocated." Baker testified, "There was no objection."

Apex hired a contractor, who removed two sets of windows, installed new entrance doors to the units, and made the existing doors "nonoperable." During the renovation, the contractor removed approximately thirty exterior bricks, replaced plywood, and added new sidewalks.[1] The Association ordered Apex to cease and desist with the renovations. Apex ignored the orders, completed the construction, and paid the contractor $5095.48.

The Association filed a "petition at law," alleging Apex breached the Association bylaws and violated Iowa Code chapter 499B (2017) "by making significant exterior alterations to the building without the . . . Association's

---

[1] Apex added a playground and fence, which other owners removed and placed into locked storage. Someone later manipulated the lock on the storage facility and removed the items.

approval." Following trial, the district court determined Apex violated the Association bylaws and chapter 499B by failing to notify the Association of its proposed changes to the building. The court ordered Apex to "place the exterior of the condominium building in its condition prior to the exterior renovation done to the building in 2016" "no later than ninety days from the date of this order." As noted, the court denied the Association's request for attorney fees.

Apex appealed. Meanwhile, the Association moved for enlarged findings and conclusions on the issue of attorney fees, which the court denied. The Association appealed, the two appeals were consolidated, and the case was transferred to this court for disposition. The district court stayed the judgment pending appeal.

## II. Standard of Review

Apex argues our review of these issues is de novo. The Association counters that we are obligated to review the legal issues raised by Apex for errors of law.

The petition was filed with an equity number and sought injunctive and other equitable relief in addition to damages. *See Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 180–81 (Iowa 2001) (stating "[g]enerally, the issuance of an injunction invokes the equitable powers of the court," and "[g]enerally, our standard of review for the issuance of injunctions is de novo"). But those facts do "not control our review." *City of Riverdale v. Diercks*, 806 N.W.2d 643, 651 (Iowa 2011). "Rather, the manner in which the district court actually tried the action determines our standard of review." *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013).

The Association raised a classic breach-of-contract claim. *Cf. Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 178 (Iowa 2010) ("[A]n action on contract is treated as one at law."). The district court resolved the action under a contract theory, specifically noting that "[t]he construction and interpretation of the by-laws and declaration of a condominium owners association is a matter of law to be determined by the Court." *See Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 149–50 (Iowa 2011) (applying general rule of contracts to construe bylaws of condominium association). Accordingly, our review is at law, with fact-findings binding us if supported by substantial evidence. *Id.* at 149; *see also Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007) ("[T]he existence of a request for an injunction does not alter our conclusion that this matter was tried as a law action."); *Pheasant Hills Eldridge Condo. Owners & Facilities Ass'n v. Ray*, No. 15-0587, 2016 WL 4543611, at *1 (Iowa Ct. App. Aug. 31, 2016) (applying legal error standard notwithstanding request for injunction).

### III.   Enforceability of the Association Bylaws

Apex argues several structural or procedural omissions precluded the Association from enforcing the bylaws. Specifically, Apex notes (1) the Association's corporate status was dissolved and never reinstated, (2) the Association president and treasurer were "not members and officers according to the bylaws," and (3) "[t]he illegitimate actions of [the Association] arising from allowing unauthorized member/officers compound issues regarding lack of a quorum considering the inclusion of unauthorized members in the quorum."

On the first issue, the district court concluded, "[N]owhere in the bylaws or in the declaration of establishment of horizontal property regime does it state that

the Association must be incorporated." The court is correct. Additionally, chapter 499B contains no requirement of incorporation. *See* Iowa Code chapter 499B; *see also id.* § 499B.2(4) ("The business and affairs of the council of co-owners *may be conducted by organizing a corporation* not for pecuniary profit of which the co-owners are members." (emphasis added)).

On the second and third issues, the court found the president and treasurer had "authorization from the unit owners to act on their behalf" and "[t]here is nothing in the bylaws or the declaration that prohibits voting by proxy if authorized by the unit owners." Testimony supports the court's findings.[2]

We conclude the structural and procedural issues raised by Apex did not render the bylaws unenforceable.

### IV. Laches

Apex asserts the defense of laches applied to preclude enforcement of the bylaws. *See Garrett v. Huster*, 684 N.W.2d 250, 255 (Iowa 2004) ("Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another."). The Association counters that Apex "did not plead laches as an affirmative defense and the district court did not rule on this issue."

"Affirmative defenses normally must be specially pleaded." *Reilly Constr. Co. v. Bachelder, Inc.*, No. 14-0817, 2015 WL 1331634, at *8 (Iowa Ct. App. Mar. 25, 2015) (citing Iowa R. Civ. P. 1.419). "Failure to plead an affirmative defense

---

[2] Written authorizations filed by the officers were uploaded but may not have been formally admitted.

normally results in waiver of the defense, unless the issue is tried with the consent of the parties." *Dutcher v. Randall Foods*, 546 N.W.2d 889, 893 (Iowa 1996).

The defense of laches was an affirmative defense. *See City of Clinton v. Loeffelholz*, 448 N.W.2d 308, 310 (Iowa 1989) ("An affirmative defense is 'one resting on facts not necessary to support plaintiffs' case.'" (citation omitted)). Apex did not plead the defense. And, although Apex raised the doctrine of laches in its post-trial brief,[3] the Association's simultaneously-filed post-trial brief made no mention of the issue.

Even if we were to find that the issue was tried by consent, there is a more fundamental problem: the district court did not rule on the defense and Apex did not seek enlarged findings and conclusions. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before [the court] will decide them on appeal."). In the absence of a ruling, we have nothing to review.

## V. Injunction

Apex contends the record does not "contain evidence establishing the requirements for the issuance of an injunction." Specifically, Apex argues:

> [The Association] offered no evidence of any damage whatsoever. There is no showing of the hardship [the Association] would suffer if the request for an injunction is denied. On the other hand, the hardship suffered by [Apex Holdings] would be substantial if they were required to remove the doors installed according to the fire department order. The hardship to [Apex Holdings] would

---

[3] Apex's post-trial brief stated "the association took no action to prevent or halt the installation of the doors until . . . over six months after the other owners were informed of the plan to move the doors" and asserted the association was "not entitled to relief due to laches."

include the waste of the cost of adding the new doors, the cost of removing the new doors and making the old doors inoperable, substantial chaos arising from the violation of the fire department order, removal of the day care, etc.

"Generally, a party seeking an injunction must prove '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is [not another] adequate [means of protection] available.'" *Ney v. Ney*, 891 N.W.2d 446, 451 (Iowa 2017) (citation omitted).

Although the Association argues the issue of an injunction was not raised and the district court did not grant an injunction, we disagree. At trial, the court characterized the Association's request as "an injunction requiring [Apex] to redo the exterior to its original position." The court continued, "I'm not sure that's damages if that was the remedy." The court's final order required Apex to "place the exterior of the condominium building in its condition prior to the exterior renovation done to the building in 2016." The court ordered injunctive relief.

We believe injunctive relief was unnecessary because there existed an adequate remedy at law, namely damages. *Id.* at 451–52 (stating "an injunction can only issue if the available legal remedies are inadequate to avoid the substantial injury" and "[w]e consider the available remedies at law inadequate if the character of the injury is such 'that it cannot be adequately compensated by damages at law'" (citation omitted)). The Association established that the cost of the renovation was $5095.48. *See Nichols v. City of Evansdale*, 687 N.W.2d 562, 572 (Iowa 2004) (noting plaintiffs could "be adequately compensated by damages"); *cf. State v. Roache*, 920 N.W.2d 93, 106 (Iowa 2018) ("One measure

of damages is the replacement cost . . . . 'The general rule in Iowa for repairs or for replacement [of property] is the fair and reasonable cost of replacement or repair, but not to exceed the value of the property immediately prior to the loss or damage.'" (citation omitted)).  This damage figure sufficed to place the Association in the position it would have been in prior to the damage.  We reverse the injunction and remand for entry of a damage award in the amount of $5095.48.

## VI.  Attorney Fees

In its consolidated appeal, the Association contends the district court "abused its discretion when it refused the Association's request for reasonable attorney fees and costs after entering judgment against [Apex]."  The Association points to an amendment to the bylaws, recorded before the petition was filed, authorizing the payment of attorney fees.

The district court denied the Association's request, reasoning as follows:

> The court notes that most, if not all, of the construction activities of the defendants took place in the fall of 2016.  It would appear that the by-laws were amended in anticipation of this litigation.  The court declines to award attorney fees to the plaintiff in that the construction activities that precipitated this litigation and the amendment that allowed attorney fees occurred prior to the passage of the amendment.

We discern no abuse of discretion in the district court's ruling.  *See NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 469 (Iowa 2010) (setting forth standard of review).

*VII.* *Disposition*

We affirm all aspects of the district court's final order except the grant of injunctive relief. We reverse that portion of the final order and remand for entry of judgment in favor of the Association for $5095.48 plus interest.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**