# IN THE COURT OF APPEALS OF IOWA

No. 21-0336
Filed November 23, 2021

**GAYLENE FAYE HARDY-WILSON,**
Plaintiff-Appellee,

**vs.**

**THOMAS HADAWAY,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Amy Moore, Judge.

A former husband appeals the extension of a domestic abuse protection order in favor of his ex-wife. **REVERSED.**

Thomas Hadaway, Madrid, self-represented appellant.

Michael Lewis of Lewis Law Firm, P.C. (until withdrawal), Cambridge, for appellee.

Gaylene Hardy-Wilson, Colo, self-represented appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A former husband appeals the extension of a domestic abuse protection order in favor of his ex-wife.

The husband and wife divorced in 2019. A week after the dissolution decree was filed, the ex-wife filed a petition for relief from domestic abuse. The district court entered a temporary protective order restraining the ex-husband "from committing further acts of abuse or threats of abuse" and "from any contact with" the ex-wife. Following an unreported hearing, the district court filed a protective order by consent agreement without a finding of domestic abuse. The order was to "remain in effect for" a year "unless it [was] modified, terminated, extended, or superseded by written order of the court, or until the dismissal of the case."

At the expiration of the one-year period, the ex-wife moved to extend the protective order. She alleged her ex-husband "remain[ed] antagonistic toward [her] and she fear[ed] him and for her safety should the protective order be lifted." The district court extended the protective order on a form used for petitions for relief from sexual abuse but later vacated the order and referred the matter to another judge "for appropriate disposition of the plaintiff's request for an extension of the consent order." Following an evidentiary hearing, the court extended the domestic abuse protective order for one year.

The ex-husband filed a motion to reconsider and a notice of appeal. The district court declined to consider the reconsideration motion in light of the appeal.

Meanwhile, the ex-wife moved to dismiss the appeal. She argued her desire "to withdraw her motion to extend protective order" would render the appeal

moot. The supreme court denied the motion. The case was transferred to this court for disposition.

The ex-husband argues (1) the district "court lacked subject matter jurisdiction" to extend the protective order; (2) there was insufficient evidence to support a finding that he continued to pose a threat to the safety of his ex-wife; and (3) the district court erred in assessing "all court costs" to him.

## I.    *Subject-Matter Jurisdiction*

"Subject matter jurisdiction refers to the power of the court to hear and determine cases of the general class to which the proceeding in question belongs." *Vance v. Iowa Dist. Ct. for Floyd Cnty.*, 907 N.W.2d 473, 477 (Iowa 2018). Subject matter jurisdiction is distinct from "[j]urisdiction of the case," which "refers to a court's 'authority to hear the particular case.'" *Ney v. Ney*, 891 N.W.2d 446, 453 (Iowa 2017) (citation omitted). The ex-husband's jurisdictional argument encompasses several sub-arguments.

First, he contends his ex-wife filed her motion to extend the protective order at 5:01 p.m. on the final effective date of the original order, rendering it untimely. *See* Iowa Code § 4.1(34) (2019); *accord Lane v. Spencer Mun. Hosp.*, 836 N.W.2d 666, 667 (Iowa Ct. App. 2013) ("[U]nder our rule for computing time, 'the first day shall be excluded and the last included.'"). He overlooks an Iowa Court rule stating "[a] document is timely filed if it is filed before midnight on the date the filing is due." Iowa Ct. R. 16.309(c). Because the extension motion was filed before midnight on the final effective date of the original order, it was timely.

Second, the ex-husband contends that "the Motion to extend Mutually Agreed to [protective order] was not filed by an attorney of record at the time Motion

was filed." He bases his assertion on the appearance of an attorney before his first was allowed to withdraw. We are hard pressed to discern how the involvement of two attorneys deprived the court of subject matter jurisdiction.

Third, the ex-husband asserts the protective order "clearly does not meet the statutory requirements" because "[t]here was never a required finding . . . [of] domestic abuse." The court of appeals addressed this claim in *Wendt v. Mead*, No. 16-0928, 2017 WL 510972, at *1–2 (Iowa Ct. App. Feb. 8, 2017). There we stated "[t]he identified defects in the order of protection and extension implicate the district court's authority to act and not its jurisdiction," rendering the protective order voidable rather than void and requiring any challenge to the court's authority to be raised in the district court. Because the ex-husband consented to entry of the protective order without a finding of domestic abuse, he waived his right to challenge the court's authority to issue the order without a domestic abuse finding.

Fourth, the ex-husband takes issue with the district court's original sexual abuse protective order. As noted, the court corrected that mistake.

Finally, the ex-husband argues the order was entered after "ex parte conversations with the Judge." He does not cite any portion of the record to support the assertion and provides no authority holding an ex parte conversation deprives a court of subject matter jurisdiction. The issue is waived. See Iowa R. App. P. 6.903(2)(g)(3).

## II.    Sufficiency of the Evidence

Once a protective order under the domestic abuse statute has been entered, the protected party may apply for an extension of the protective order. *See* Iowa Code § 236.5(2). The court may extend the order if it finds "the

defendant continues to pose a threat to the safety of the victim, persons residing with the victim, or members of the victim's immediate family." *Id.*

The ex-wife began by describing the event that precipitated her filing of a petition for relief from domestic abuse. Under the dissolution decree, she had "possession of the house and property" for a little over a month. Shortly after the decree was filed, she returned home to find her ex-husband "loading up things and taking them." She told him "he was not to be on the property." "Words were exchanged," and she "turned to walk into the house. She "could feel him walking fast behind" her so she "started running." She "got inside the door and . . . tried to shut it and he headbutted [her] to get into the door, entered the house and verbally abused [her]." She clarified that headbutting meant "[h]e smacked his face into [her] mouth," causing "a cut inside [her] lip." As discussed, the ex-husband consented to entry of a protective order.

Turning to the request for an extension, the ex-wife testified her ex-husband continued to pose a threat to her "[b]ecause [she] lived with him for six years and [she saw] him do many things with his temper." When asked if she saw "examples of his temper since the order was entered," she responded, "No." At the same time, she voiced her belief that she would have to deal with his aggression again if the order were not extended. She stated that she locked her doors "every time [she came] in and out of the house because" she was "scared" and she did not "trust that he would stay away if this wasn't in place."

We have no reason to question the ex-wife's fear of her ex-husband. But "trepidation, standing alone, is not enough to prove he continues to pose a threat to her safety." *Clark v. Pauk*, No. 14-0575, 2014 WL 6682397, at *3 (Iowa Ct. App.

Nov. 26, 2014). While a new incident of domestic abuse is not required, to obtain an extension, there must be proof "the domestic abuser 'continues' to pose a threat to the victim's safety." *Id.* at *4 (quoting Iowa Code § 236.5(2)).

In *Clark*, there was evidence that the defendant "moved to a residence in Clark's neighborhood," walked by her house, and, as a driving instructor, had "an ostensibly legitimate purpose to drive by her house at any time of day." *Id.* Here, the ex-husband testified he did not even know where the ex-wife lived until her address was elicited at the extension hearing. *See Fettkether v. Kaster*, No. 11-0373, 2012 WL 170692, at *3 (Iowa Ct. App. Jan. 19, 2012) (noting that the parties lived "approximately seventy-five miles apart" and the defendant "never violated the protective order"). The ex-wife did not dispute this testimony. The ex-husband also did not threaten violence after the consent protective order was filed. *See Doyle v. Doyle*, No. 13-0753, 2013 WL 6405474, at *3 (Iowa Ct. App. Dec. 5, 2013) (noting "[t]here were no threats of violence in any of the unwanted communications" postdating the original protective order). Finally, the ex-husband did not follow, call, or otherwise attempt to contact his ex-wife after the protective order was filed. *Cf. Sims v. Rush*, No. 10-0237, 2010 WL 3503943, at *4 (Iowa Ct. App. Sept. 9, 2010) (affirming extension "[b]ased on Sims's existing fear" and the defendant's "behaviors while the protective order was in existence," specifically, calls to her and gestures while he drove past); *In re Alatorre*, No. 01-0045, 2002 WL 576171, at *2 (Iowa Ct. App. Feb. 20, 2002) (considering the respondent's threat to beat up the petitioner's cousin and his comment to their daughter that the "no-contact order was set to expire," and concluding his "behavior, . . . violations of the protection order, and [the respondent's] fearful demeanor during the hearing"

established the need for an extension of the protective order).  In the absence of any conduct that could be objectively deemed a threat, we conclude the ex-wife failed to establish the need for an extension of the protective order.  *See Wendt*, 2017 WL 510972, at *2 ("The text of the statute indicates this is an objective inquiry rather than a subjective inquiry.").  On our de novo review of the record, we reverse the extension of the protective order.

### III.    Costs

The ex-husband contends the district court erred in assessing "all district court cost[s]" to him.  In his view, "the original protective order should have been equitably shared between both parties since both wanted and agreed to a consensual protective order from the court."

The consent protective order stated "[t]he parties appeared and each consented to the entry of this order."  The order stated, "[C]ourt costs are assessed against" the ex-husband.  The same day, a statement of costs was filed, stating in part: "Obligor: . . . Balance Due: $384."  Because the ex-husband consented to having court costs taxed to him, he cannot complain about them on appeal.

**REVERSED.**

Bower, C.J., concurs; Schumacher, J., dissents in part and specially concurs in part.

**SCHUMACHER, Judge** (dissenting in part and specially concurring in part).

I respectfully dissent from the majority opinion that finds reversal of the extension of an order of protection, pursuant to Iowa Code chapter 236, is required and specially concur on the assessment of court costs against the ex-husband from the original proceeding.

## I.      Sufficiency of the Evidence

The statute that affords the extension of a no-contact order requires proof by a preponderance of the evidence that "the defendant continues to pose a threat to the safety of the victim, persons residing with the victim, or members of the victim's immediate family."  Iowa Code § 236.5(2).  As this court has noted:

> The text of the statute indicates this is an objective inquiry rather than a subjective inquiry.  Other states have reached similar conclusions regarding similar statutes.  *See, e.g.*, *Ritchie v. Konrad*, 10 Cal. Rptr. 3d 387, 397 (Cal. Ct. App. 2004) ("We conclude that in California, as in the rest of the country, an objective test must be satisfied before a protective order is renewed in contested cases."); *Giallanza v. Giallanza*, 787 So. 2d 162, 164 (Fla. Dist. Ct. App. 2001) (requiring showing of either additional domestic violence or that victim "has a continuing reasonable fear of being in imminent danger of becoming the victim of domestic violence"); *Baird v. Baird*, 234 S.W.3d 385, 388 (Ky. 2007) (holding "there must be some showing of a continuing need" for a protective order); *Iamele v. Asselin*, 831 N.E.2d 324, 330 (Mass. 2005) ("Typically, the inquiry will be whether a plaintiff has a reasonable fear of 'imminent serious physical harm.'" (citation omitted)); *but see Forehand v. Forehand*, 767 S.E.2d 125, 128 (N.C. Ct. App. 2014) (considering plaintiff's "subjective fear of defendant").

*Wendt v. Mead*, No. 16-0928, 2017 WL 510972, at *2 (Iowa Ct. App. Feb. 8, 2017).

Our record here is somewhat limited.  However, it contains sufficient evidence to establish Hadaway posed a continuing threat.  Hadaway's ex-wife testified she remained in fear of Hadaway.  *See Clark v. Pauk*, No. 14-0575, 2014 WL 6682397, at *3 (Iowa Ct. App. Nov. 26, 2014) (considering victim's "concern[]

about [abuser's] violent past"); *Doyle v. Doyle*, No. 13-0753, 2013 WL 6405474, at *3 (Iowa Ct. App. Dec. 5, 2013) (considering whether "a real sense of fear existed"); *Sims v. Rush*, No. 10-0237, 2010 WL 3503943, at *4 (Iowa Ct. App. Sept. 9, 2010) (affirming extension "[b]ased upon Sims's existing fear"); *In re Alatorre*, No. 01-0045, 2002 WL 576171, at *2 (Iowa Ct. App. Feb. 20, 2002) (considering victim's "fearful demeanor during the hearing").

> A history of domestic abuse, in and of itself, under some circumstances may be enough to establish a continuing threat. *See Cueto v. Dozier*, 193 Cal. Rptr. 3d 663, 671 (Cal. Ct. App. 2015) ("As the *Ritchie* court recognized, the facts supporting the initial restraining order 'often will be enough in themselves to provide the necessary proof to satisfy the test.'" (citing *Ritchie*, 10 Cal. Rptr. 3d at 387)); *Cruz-Foster v. Foster*, 597 A.2d 927, 930 (D.C. 1991) (stating "the past history of the case is critical to the determination whether" victim proved her case by preponderance of the evidence); *Sims*, 2010 WL 3503943, at *3 (considering testimony about abuse prior to parties' separation); *Gehrke*, 115 A.3d at 1257 ("In this context, a court's consideration of evidence of earlier abuse is appropriate, particularly when preceding orders were entered without the court making particularized factual findings or were entered by agreement of the parties without any finding of abuse.").

*Wendt*, 2017 WL 510972, at *2.

Here, the original protective order, entered by consent, was based on Hardy-Wilson's allegation that her ex-husband came onto her property and head-butted her, causing a cut to the inside of her lip. As noted by the majority, Hadaway consented to the order of protection. Consequently, there was no finding of domestic abuse.

In the instant record, the district court entered the extension on a form order, indicating, "The court finds sufficient evidence to grant Petitioner's Motion to Extend Protective Order Pursuant to Iowa Code section 236.5(2)." While we lack findings of fact, we have the transcript of proceedings that evidences Hardy-

Wilson's fear of her ex-husband. Testimony established the parties have another hearing pending. Hadaway has been confrontational with Hardy-Wilson's attorney, to a point where Hardy-Wilson thought he would strike her attorney in the courthouse hallway.[1] The protected party testified to her belief that the only thing that had protected her in the past was the previously entered no-contact order. She added that from the date of the original incident that prompted the no-contact order, "I have locked my door every time I come in and out of the house because I am scared. I have put up cameras at my new residence at both doors." On this record, Hardy-Wilson "has a continuing reasonable fear of being in imminent danger of becoming the victim of domestic violence." I would affirm the extension of the no contact order.

## II.    Court Costs

I concur with the majority that determines the costs of the original hearing were appropriately assessed to Hadaway. However, my analysis varies. The order entering the protective order was filed on December 23, 2019. A notice of costs due was filed the same day. Hadaway did not file his appeal until March 3, 2021, well beyond the statutory time for an appeal. The jurisdictional requirement of Iowa Rule of Appellate Procedure 6.101(1)(b) was not met. Rule 6.101(1)(b) requires "[a] notice of appeal must be filed within 30 days after the filing of the final order or judgment." Iowa R. App. P. 6.101(1)(b); *see also Freer v. DAC, Inc.*, 929 N.W.2d 685, 687 (Iowa 2019).

---

[1] Although the record is not clear, this appears to have occurred around the time of the entry of the original protective order. Hardy-Wilson was present for this event.

While Hadaway consented to the original protective order, we do not have the transcript of the hearing. The order entered in December 2019 does not indicate a consent to the assessment of costs. Hadaway's appeal concerning the assessment of costs on the original proceeding is untimely.