# IN THE COURT OF APPEALS OF IOWA

No. 22-1097
Filed April 26, 2023

**FOREST HILL FARM PRODUCTS, LLC, GLENDA M. PLOZAY and KEITH L. KOCH, Individually and as Trustees of the KEITH L. KOCH AND GLENDA M. PLOZAY REVOCABLE TRUST,**
Plaintiffs-Appellees,

**vs.**

**JORDAN LANDSGARD and JESSE LANDSGARD, Individually and d/b/a LANDSGARD BROTHERS, LLC,**
Defendants-Appellants.
_____

Appeal from the Iowa District Court for Clayton County, Alan Heavens, Judge.

Defendants in a civil suit appeal the imposition of an injunction. **AFFIRMED.**

Christopher C. Fry and Alyssa M. Carlson of O'Connor & Thomas, P.C., Dubuque, for appellants.

Matthew L. Preston and Cara L. Roberts of Brady Preston Gronlund PC, Cedar Rapids, for appellees.

Heard by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Jesse and Jordan Landsgard, individually and doing business as Landsgard Brothers, LLC, (collectively Landsgard), appeal an injunction concerning the application of herbicides, pesticides, and other chemicals to their crops. They contend the injunction is unnecessary to prevent harm to Glenda Plozay, Keith Koch, and Forest Hill Farm Products (collectively Forest Hill) and their organic farm. Upon our de novo review, we uphold the injunction.

## I.    Background Facts & Proceedings

Landsgard rents and operates a traditional farm that abuts Forest Hill's organic farm. Because they operate a traditional farm, from time to time, Landsgard sprays their fields with chemicals such as herbicides and pesticides. Sometimes the Landsgard brothers apply the chemicals themselves, but they also hire applicators to apply the chemicals. Forest Hill operates a farm centered on selling livestock raised on certified organic pasture.

Forest Hill asserts that the chemicals Landsgard applies frequently drift onto their organic farm. In particular, they cite three incidents in which they believe chemical drift occurred. The first occurred August 6, 2019. Upon reporting the drift to the Iowa Department of Agriculture and Land Stewardship (IDALS), the department conducted testing that did not indicate the presence of chemicals on Forest Hill property. The second incident, June 17, 2020, did result in IDALS determining chemical drift occurred. As a result of that incident, the organization that certifies Forest Hill as organic required Forest Hill to increase their setback by fifty feet, resulting in a total of about two acres that the farm could not use. The

final challenged incident, July 31, 2020, was not reported to IDALS or the organic certification organization. It is unknown if chemicals landed on Forest Hill.

Forest Hill filed a petition on September 11, 2020, raising several claims against various parties, including claims of negligence and nuisance against Landsgard.[1] A jury found Landsgard was liable on theories of negligence and nuisance, resulting in an award of $10,000 for loss of enjoyment of life and $4986.84 for lost profits.[2]

Following the jury trial, the district court held a hearing on a requested injunction against Landsgard. The court took notice of the underlying trial, but highlighted that the instant hearing was in equity. After noting a lack of communication between the parties, the court imposed a limited permanent injunction with these restrictions:

> 1. The Landsgards must give Forest Hill representatives Keith Koch and Glenda Plozay at least one hour of advance written notice by email or text message of any planned chemical applications by the Landsgards or anyone acting at the Landsgards' request. The advance written notice must contain a phone number that the applicator may be reached at during the time when the application is taking place.
> 2. Forest Hill representatives are allowed to communicate with the chemical applicator if they believe that the conditions are inappropriate for applying chemicals at any point before or during the application. The chemical applicator may choose to accept or reject any requests or suggestions made by Forest Hill representatives.
> 3. Anyone applying chemicals to the Landsgards' rental property must read and follow all local, state and federal regulations regarding chemical application, comply with all labeling requirements for any chemical applied and maintain records of all chemicals applied in accordance with all applicable chemical recordkeeping requirements.

---

[1] There was significant motion practice in this case. For the sake of brevity, we focus only on the claims involving Landsgard.
[2] Landsgard does not appeal the jury verdict.

     4.  Anyone who applies chemicals to the Landsgards' rental property is required to notify Forest Hill representatives in writing within 12 hours of when there is any reason to know or reasonably believe that chemicals have entered Forest Hill property by direct application or by drifting.  The applicator must separately report, in writing, any potential contamination to [IDALS] within 48 hours of having reason to believe that chemicals have entered Forest Hill property.

     5.  The Landsgards, and any applicator, must participate in good faith in any investigation by [IDALS] or similar investigatory agency.

Landsgard appeals the imposition of the injunction.

## II.     Standard of Review

The parties disagree on the applicable standard of review.  Generally, we review injunctive relief de novo.  *See, e.g.*, *City of Des Moines v. Ogden*, 909 N.W.2d 417, 422 (Iowa 2018).  But, "[a]n injunction may be obtained as an independent remedy by an action in equity, or as an auxiliary remedy in any action."  *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007).  "In either case, the party applying therefor may claim damages or other relief in the same action."  Iowa R. Civ. P. 1.1501.  Forest Hill sought monetary damages for various torts including negligence and nuisance.  Forest Hill alleges they sought an injunction as an auxiliary remedy, making the case an action at law.

But the court bifurcated the trial on the tort claims from the matter of the injunction.  During the hearing on the injunction, the court was clear that it was hearing the matter in equity.[3]  "[T]he manner in which the district court actually tried the action determines our standard of review."  *Horsfield Materials, Inc. v. City of*

---

[3] Indeed, the court noted that because it was sitting in equity, it would "err on the side of letting evidence in and then, of course sort it out.  Just because I let it in doesn't necessarily mean that I'm going to rely on any of it, just that it should become part of the record in this case."

*Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013). Because the court heard the matter in equity, our review is de novo.[4]

## III. Discussion

Landsgard appeals the imposition of an injunction requiring them to notify Forest Hill when they intend to spray chemicals on their fields. "While we emphasize that a permanent injunction is a remedy that should be granted only with great caution, an injunction is warranted when it is necessary to prevent irreparable injury to the plaintiff and when there is no adequate remedy at law." *In re Langholz*, 887 N.W.2d 770, 779 (Iowa 2016). Injunctions are meant to prevent future harm, not punish past conduct. *Id.*

"Generally, a party seeking an injunction must prove '(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is [not another] adequate [means of protection] available.'" *Ney v. Ney*, 891 N.W.2d 446, 451 (Iowa 2017) (quoting *Sear v. Clayton Cnty. Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999)). "When determining whether an injunction is a proper remedy, the court must weigh the relative hardship to each party." *Langholz*, 887 N.W.2d at 779. Landsgard challenges the district court's findings on each prong.

### A. Invasion or Threatened Invasion

"Under the first prong, a party seeking an injunction must prove intervention is necessary to protect rights cognizable in equity that have been invaded or threatened with invasion." *Ney*, 891 N.W.2d at 751. Additionally, an injunction

---

[4] We note that at oral arguments, both parties agreed the outcome of the case would remain the same regardless of which standard we apply.

may be used to "prevent repetition of a trespass . . . rather than continually require[ing] the plaintiff" to file lawsuits against the defendant. *Id.* Landsgard concedes an invasion occurred during the June 17, 2020 application of FeXapan. Forest Hill identifies two other incidents of chemical drift that occurred on August 6, 2019, and July 31, 2020. Landsgard contends there is no evidence of those occurrences. But the owners of Forest Hill testified that they saw the chemicals drift onto their property. The lack of definitive soil samples does not automatically defeat their allegations—an absence of evidence is not necessarily evidence of absence. *See Minger Const., Inc. v. Clark Farms, Ltd.*, No.14-1404, 2015 WL 7019046, at *11 (Iowa Ct. App. Nov. 12, 2015) (McDonald, J., concurring). Landsgard identifies nineteen occasions in which they sprayed chemicals on their property between April 20, 2019, and July 20, 2020. The frequent nature of the spraying heightens the risk of repetitive injury and litigation. Forest Hill has demonstrated an invasion and the threat of future invasion of their property.

### B. Substantial Injury Without Injunction

Turning to the second prong, "a district court generally may not issue an injunction unless substantial injury will result from the invasion" or threatened invasion of the right. *Ney*, 891 N.W.2d at 451. Forest Hill testified to the steps they needed to take following the June 2020 chemical drift, including imposing an additional set back that reduced the amount of land available to use in their organic farming operation by about two acres. Continued chemical drift could place their certification at risk. That the June 2020 drifting incident did not result in their certification being revoked is not dispositive—it is readily imaginable that repeated violations of the certification requirements would result in further penalties. And

the injunction helps alleviate the burdens of investigating and reporting potential drift to Forest Hill's organic certifying organization. Moreover, the hour notice allows Forest Hill to move their livestock away from the property line, preventing contamination from undermining Forest Hill's assertion that the livestock are raised on certified organic pasture.

As part of this prong, "the court should carefully weigh the relative hardship which would be suffered by the enjoined party upon awarding injunctive relief." *Id.* As noted above, Forest Hill faces substantial injury should chemical drift continue unabated. Contrary to Landsgard's contentions, we decline to find the jury award insubstantial just because Forest Hill requested more compensation than they received. In contrast, the restrictions imposed on Landsgard in the injunction are minor. As Landsgard concedes, the injunction does not prevent them from applying chemicals when and where they choose. Subject to local, state, and federal regulations, as well as labeling instructions—which Landsgard was already obligated to follow—they are free to do as they please so long as certain notification requirements are followed.

The main element of the injunction Landsgard contends as unduly burdensome is the requirement that they notify Forest Hill at least one hour before the application of any chemicals, no matter where on the property they are applied. In particular, Landsgard asserts the one-hour notice unduly restricts their ability to change plans in the face of shifting weather.

First, we determine a one-hour notice is equitable—the record demonstrates there are several steps that must be completed before the application of chemicals, and the application itself can take hours. Notice an hour

before the application, which can be done quickly and easily via email or text message, does not appreciably lengthen the process or limit Landsgard's flexibility in applying chemicals to their fields.

And the court imposing this restriction on the application of any chemical anywhere on Landsgard's property was reasonable. An injunction "should be set forth with certainty and clearness so that persons bound by the decree may readily know what they must refrain from doing without speculation or conjecture." *Langholz*, 887 N.W.2d at 780 (quoting *Opat v. Ludeking*, 666 N.W.2d 597, 605 (Iowa 2003)). The district court was not in a position to go through the multitude of chemicals the Landsgards could conceivably apply to their fields. Nor was it in a position to list the specific distance from Forest Hill's property which would trigger the injunction for each chemical, which have labeling requirements that differ from chemical to chemical and various weather conditions. The injunction imposes clear requirements that Landsgard can readily discern. The injunction prevents a substantial harm to Forest Hill without imposing a substantial burden on Landsgard.

### C. Adequacy of Other Remedies

Finally, we must determine whether alternative legal remedies would adequately address Forest Hill's concerns. *Ney*, 891 N.W.2d at 451. It is true that monetary damages are available for injury from negligent application of chemicals and nuisance, the two torts the jury found Landsgard committed. But given the repetitive nature of the chemical application, monetary damages may be inadequate without interminable litigation. And if further instances of chemical drift occur, the risk of losing the organic certification looms large over Forest Hill.

**IV. Conclusion**

Because Forest Hill established that an injunction is necessary to prevent repetitive injury to their organic farming operation, we affirm.

**AFFIRMED.**